1  Michael A. Doran, Esq., #147697
2  1670 Market Street Ste 122
   Redding, CA 96001
3  (530) 241-6885

4  Attorney for Plaintiff
   Donna Ruth O'Connor-Rose
5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  Donna Ruth O'Connor-Rose, an    )   CASE NO.: 2:12-cv-00225-
   individual                      )        WBS-CMK
10                                 )
                                   )
11        Plaintiff                )   PLAINTIFF DONNA RUTH
                                   )   O'CONNOR-ROSE'S REPLY
12 vs.                             )   TO JP MORGAN CHASE BANK,
                                   )   N.A.'S MEMORANDUM OF POINTS
13                                 )   AND AUTHORITIES IN OPPOSITION
   JPMORGAN CHASE BANK, N.A., a    )   TO PLAINTIFF'S MOTION TO
14 corporation                     )   ENFORCE SETTLEMENT AGREEMENT
                                   )   AND FOR AWARD OF ATTORNEYS'
15                                 )   FEES; DECALATIONS OF MICHAEL
          Defendant.               )   DORAN AND DONNA RUTH O'CONNOR-
16                                 )   ROSE
                                   )
17                                 )
                                   )   DATE: JANUARY 13, 2014
18                                 )   TIME: 2:00 PM
                                   )   CTRM: 5
19                                 )
                                   )
20                                 )   Hon. William B. Shubb

21

22

23

24

25

26

27

28 PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN          1
   CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES
   IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
   AGREEMENT AND FOR AWARD OF ATTORNEYS'FEES; DECALATIONS OF
   MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

1

2    1. **INTRODUCTION**

3        Defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant")

4    in their Opposition argues that no settlement occurred in this

5    matter and that the Statute of Fraud applies, but fails to

6    address the fact that the only term the parties were negotiating

7    following the submission of the Loan Modification document was

8    principal reduction. Collateral estoppel applies as plaintiff

9    sold her land in reliance on the settlement following the

10   settlement on October 28, 2013.

11   2. **THE SETTLEMENT THAT OCCURRED ON OCTOBER 28, 2013 WAS**

12      **UNEQUIVICAL**

13       On October 28, 2013, Mr. Block on the phone UNEQUIVICALLY

14   offered to settle the above case by modification agreement

15   previously sent with a $20,000 principal reduction from the

16   numbers that were on that document.  There was a little back and

17   forth orally that day because Mr. Block said he could not get

18   authority to reduce the principal $25,000 which would have meant

19   that the numbers in the loan modification document would not have

20   to be changed other than eliminating the down payment—Mr. Block

21   was firm that the $20,000 was the only authority that he had or

22   could ever get. The parties had waited to this point to get that

23   authority to reduce principal where in fact $25,000 was in

24   consideration.  Mr. Block further communicated authority to move

25   out with some money, but that was simply an alternative because

26   the previous discussion the amount under 'consideration' was

27   $25,000, so since $20,000 principal reduction was all he did have

28   **PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN**              2
     **CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES**
     **IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**
     **AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF**
     **MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

1  authority for, and if that wasn't going to work, than having a
2  move out alternative made some sense.   Plaintiff's counsel had
3  the duty to communicate this firm and authorized offer to his
4  client—which he did.   There is no such duty to communicate what
5  Chase was "considering" nor accept it.   That unequivocal offer
6  was however in fact communicated and unequivocally accepted and
7  documented by email and documented as such contemporaneously with
8  the acceptance.   There was also a very specific discussion that
9  prior to selling the parcel the plaintiff owned she would not be
10  able to come up with the $25,000 that the loan modification
11  document required because the plaintiff put all her money into a
12  parcel in case she would have to move, and so she didn't have
13  $25,000 or any amount to put 'down', and Mr. Block was very
14  specific that while he didn't get authority to reduce the
15  principal fully that $25,000, he did have authority to re-
16  capitalize the $5,000, "That isn't a problem" were his exact
17  words.   Those numbers would have to be calculated and placed back
18  in the document—that is what the parties were waiting on, not
19  waiting on authority to settle, but rather waiting then on
20  Chase's duty under the settlement agreement to draft documents
21  like for instance the request for dismissal.   All discussions and
22  emails and then the discussion itself regarded settlement of the
23  case in exchange for a loan modification and, yes, there
24  certainly was an economic basis for that settlement, which went
25  to the bottom line of principal reduction, but to argue that
26  there was no merits to the case or that there are after stated
27
28  **PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN**     3
    **CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES**
    **IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**
    **AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF**
    **MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

theories for recovery like billing fees which should have been disgorged by the billing attorneys, that attorneys have a 'special relationship', is not material to the fact that the matter settled beforehand.  Nor is a failure of consideration available to the concealing party—it's a defense to the victim.

### 3.   THE SETTLEMENT CONTAINED ALL MATERIAL TERMS.

The confirming October 28, 2013 email refers to the modification document which contains the material terms of principal balance and payments, with the minor and agreed change in writing that the $5,000 payment up front this document required would be re-capitalized into it—the only change to the Loan Modification Document as indicated in the negotiations up to October 28, 2013 was over principal.  Mr. Block does not ever refute the confirming email that was sent that day and in fact his email on November 15, 2013 refers to the "loan modification we discussed."  Item 1 D of the Loan Modification Agreement [Page 31 of the Opposition] states, "[Plaintiff is] not a party to any litigation involving the Loan Documents, except to the extent [plaintiff] may be a defendant in a foreclosure action."  This language CLEARLY indicates the fact that this lawsuit was to be dismissed which demonstrates the cohesiveness of the deal.

The Opposition p. 6 2-11 re-characterizes plaintiff's attorney's declaration by asserting that none of the material terms were included in the settlement and that the plaintiff was cherry picking a previously rejected modification offer. However, the parties all along agreed about to the modification

document, dismissal of the lawsuit with both sides carrying fees and costs. They were still negotiating ONLY over principal--"the issue is whether we can come to some agreement on a reduction in the principal balance of the loan" per Mr. Block's email prior to meeting the partner who would give him or not some authority to act (Declaration of Michael Doran p. 5) and that this would be in exchange for "lawsuit dismissal" (Declaration of Michael Doran p. 6). That agreement over principal was reached on October 28, 2013 with resulting agreement to dismiss the lawsuit with both parties carrying fees and costs and a reference to the loan modification document having the $5,000 added to the principal as a way of describing an overall $20,000 principal reduction from the Loan Modification documents.

   4.   **DECEMBER PHONE MESSAGE VARIES FROM DECLARATION ACCOUNT.**

   On December 2, 2013 Mr. Block called plaintiff's attorney and left a very specific message. Mr. Block's message uses the word **"ultimately"** and **"even though I thought we could get it"**. This language he used does not indicate that Chase was considering authority, but rather that he **HAD**, past tense, stated he **DID** have authority and **HE CONVEYED IT** but that what he said was a unilateral mistake where he ultimately didn't have the authority he thought he had. This actual offer to settle is what the plaintiff accepted on October 28, 2013, not some possibility as he now states in his declaration after the fact.

   5. **LITIGATION TACTICS EXPLAIN SETTLEMENT AND SUBSEQUENT CHANGE OF POSITION BY CHASE.**

PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN
CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF
MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

5

There is another explanation for the changing language used by Mr. Block, disavowing the settlement over a month after it was made, especially the timing of it. There is a theory that explains the behavior, involving another loan owned by Chase to the plaintiff which was wiped out in a foreclosure in 2011. In a one action state, however, the second loan for $50,000 owned by Chase was still a collectable debt even if it were unsecured. Plaintiff made her last payment for that second position loan in December 2009, which means that the statute of limitations just passed on it but was still potentially good in December 2013. This second loan on the original home owned by Chase was still a viable source of litigation payoff BUT needed an asset to 'Chase' and had to get past the potential for it to be a source of damages AGAINST Chase in this litigation. This is why the offers back and forth with respect to including a property that the plaintiff purchased matter here. Mr. Block knew the plaintiff was on title and that the property was worth about $50,000 from negotiations just before the settlement occurred on October 28, 2013. (Declaration of Michael Doran page 6). He could then have had authority from Chase to settle the case with principal reduction but only with the additional unsecured loan litigation to recover with the parcel, and then it made sense to sue the plaintiff under the other second loan, perhaps with a notice of pending action on that parcel. As of October 2013 when the subject offer was conveyed by Mr. Block that subject property was still held by the plaintiff. As of November 18, 2013, Mr. Block

was still emailing confidence in the settlement, hoping to have it wrapped up, in other words have the Loan Modification Documents redrafted to include the $5,000 to principal, and the plaintiff still owned the parcel.  The settlement protected his client, after all, from damages related to losing the original home and in relation to the second on it.  He could have his cake and eat it too, no damage award relative to the original home regarding this unconscionable loan and still have an asset to attack with the unsecured second position loan from the plaintiff's original home.

The day after the settlement agreement on October 28, 2013, the plaintiff put the subject parcel on the market. On November 22, 2013, in reliance on the settlement agreement, the plaintiff sold her parcel of land—she no longer had need for another place to live and had many other bills to pay.  Declaration of Donna Rose. It appears to be no accident that almost immediately within 10 days Mr. Block changed his 'thoughts' about what had occurred. It's entirely plausible that he never did have authority from his client to modify, or certainly from the institutions of the government which were providing kick-backs with respect to loan modifications—that the money would have had to come from the parcel that the plaintiff sold as an in house firm play—she was otherwise a self-employed person who lived in an underwater home who could keep the Modified Loan and bankrupt anything else. Mr. Block might not have had 'ultimate' authority unless he could collect on that $20,000 difference from the plaintiff's other

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS'FEES; DECALATIONS OF MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**                    7

property worth about $50,000 indirectly-which is a better
explanation than that which the Mr. Block provides.

**6. DISGORGMENT OF FEES IS A THEORY OF BREACH OR RECOVERY, NOT A REASON THERE WAS NOT SETTLEMENT OF THE BREACH OF CONTRACT CASE AND HAS NOTHING TO DO WITH THE PARTIES CARRYING LITIGATION FEES AND COSTS.**

It's the plaintiff's view that the billing fees over a
notice of default that is $5,000 off is not only malpractice but
the fees should be disgorged and certainly not billed to
plaintiff—they are valueless. Day v. Rosenthal 170 Cal.App.3d
1125, 217 Cal.Rptr.89 (1985). California Civil Code Section
2924(d). That while a banker lender relationship might not be a
'special relationship' but an attorney client relationship is for
purposes of constructive fraud, that discovery abuse occurred by
failure to disclose the attorney(s)who billed plaintiff here and
constructive fraud is a viable theory of the case.  The fact that
Chase failed to disclose who this attorney or these attorneys
were is only a failure of consideration on their part, not on
plaintiff, and so it is not available as a defense to them.
Threatening taking all action if there is opposition that
resulted in a showing of no settlement may have been poorly
stated but such threats do not mean the settlement didn't occur.

**7. STATUTE OF FRAUDS DEFENSE AND COLLATERAL ESTOPPLE**

Chase also argues that the Statute of Frauds excuses the
settlement agreement from being enforced against them.  However,
in reliance on the promises made, the settlement agreement,

PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN          8
CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND FOR AWARD OF ATTORNEYS'FEES; DECALATIONS OF
MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

plaintiff sold the land she would have built on and moved to should she have lost her home.  The subject underlying home to the loan is worth less than the loan and there are economic reasons to walk from it if an agreement had not been made.  That land was sold on November 22, 2013.  A party is estopped to assert the Statute of Frauds if it would be unjustly enriched or when unconscionable injury would result to the other party who, in reliance on the oral agreement was induced to materially change her position.  Monarco v. Lo Greco 35 Cal.2d 621, 22 P.2d 737 (1950).  Here, Chase would injure the plaintiff because now she is in the position of having no loan modification and potentially minimal damages to keep an underwater property which has a loan over it at above market interest rates, with no real options to walk from it to another place to live because her credit has been destroyed by Chase's actions.

**8. ATTORNEY FEES**

Plaintiff agrees Federal Rules apply but requests the Court defer the issue of attorney fees to the Rule 11 motion plaintiff will be making.

Respectfully submitted,

Dated: January 2, 2014

Michael Doran
Attorney for Plaintiff

PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN
CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF
MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

9

**DECLARATION OF MICHAEL A. DORAN IN SUPPORT OF MOTION**

1. I am the attorney of record for plaintiff.  I have personal knowledge of the following.

2.  On October 28, 2013, Mr. Block on the phone UNEQUIVICALLY offered to settle the above case by modification agreement previously sent with a $20,000 principal reduction from the numbers that were on that document.  He was unequivocal not just about the number but also about his authority to offer it. His authority came from a meeting with in-house counsel he notes in his email dated October 25, 2013. Before that time we were in fact on hold with the Loan Modification Agreement along the lines of consideration, where the number was around $25,000 reduction of principal.  On October 28, 2013 the phone call was the first time in two years since this litigation commenced that any reduction of principal was authorized and because of that I recall it distinctly.

3.  When Mr. Block writes in his declaration, "I called Mr. Doran and informed him that Chase was considering whether to offer Plaintiff a principal reduction of $20,000 on the loan balance (but that I did not yet have approval of the same), and asked if that would be acceptable to Plaintiff", this is not our conversation.  Our conversation was unequivocal about authority and amount of $20,000.

4. There was a little back and forth orally that day because he could not get authority to reduce the principal $25,000.  He said he had recommended that full $25,000 but could not and would

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN**   10
**CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**
**AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF**
**MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

never be able to get that kind of authority—it was the limits of what the people who were giving authority had--$20,000.  So $25,000, again, was the amount of principal reduction that was under consideration at that point, and would have meant that the numbers in the document would not have to be changed other than removing the section about putting down $25,000 and also because from previous discussions the $25,000 down or any amount down was not plausible as the plaintiff was putting her savings into a parcel she purchased in June 2013—and Mr. Block had assured me that there was no problem re-capitalizing it but the limit was in the amount of principal reduction.   Mr. Block further communicated authority to move out with some money, but that was simply an alternative if the $20,000 principal reduction wasn't going to work, because it, again, fell short of the $25,000 that was under discussion.  So basically he was also telling me that the $20,000 reduction was a firm offer.  It was understood clearly and unequivocally that the offer of a $20,000 principal reduction that the $5,000 would have to be re-calculated into the Loan Modification numbers and that wasn't a problem.

5. I had the duty to communicate this offer to my client— which I immediately did in person.

6.  Plaintiff immediately requested I accept it on her behalf.

7. That unequivocal offer was communicated and unequivocally accepted by email and documented as such contemporaneously with the acceptance.

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN CHASE BANK, N.A.'S MEMORANDUM OF POINTS  AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

11

8. Those numbers would have to be calculated and placed back in the document—that is what the parties were waiting on, not waiting on authority to settle, but rather waiting then on Chase's duty under the settlement agreement to draft documents like for instance the request for dismissal.

9.  The entire discussion for Loan Modification was in exchange for dismissal of the lawsuit and as a subpart that each side would carry their litigation costs and attorney fees. Litigation attorney fees and costs were in fact discussed, although specifically not discussed on October 28, 2013.  If one side or the other had to carry litigation fees and costs it would have been a deal breaker so it was discussed initially— attorney fees and costs were part of prior discussions and, again, the only issue left, the reason the parties were at odds and the only reason as they stated to each other to be at odds in correspondence, was over principal reduction.  The email confirming the settlement on October 28, 2013 included that each party would carry their fees and costs, meaning litigation fees and costs.  This has nothing to do with the Loan Modification or underlying loan agreement properly calling for fees under circumstances of breach, RESPA violations or under a theory of a special relationship and constructive fraud by an attorney, not a bank.  It is true that fees that were charged were in dispute—

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN**     12
**CHASE BANK, N.A.'S MEMORANDUM OF POINTS  AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**
**AGREEMENT AND FOR AWARD OF ATTORNEYS'FEES; DECALATIONS OF**
**MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

that's what led in part to the accounting dispute, but that is in part why this case settled for a principal reduction—to resolve that depute regarding overcharges in the NODs, foreclosure documents and billing statements.

10.   The case settling with cost and fees carried by the parties has nothing to do with plaintiff's claim that fees were not properly applied and that there may be, absent an enforceable settlement, a remedy that includes attorney fees such as constructive fraud where the special relationship is with an attorney and not a bank.  Chase has failed to disclose who the attorneys were here that conducted the NOD and billed for it negligently or breached their fiduciary duties.  Their response to form interrogatories only lists Mary Oney as one with knowledge of relevant facts when obviously these billing attorney(s) would also have such knowledge. See exhibit 1, attached and incorporated by reference.  I emailed Mr. Vartanian about this absence of material witnesses on September 16, 2013. It is yet another attempt to rationalize to Chase that a Loan Modification alone did not address the wrongful billing that occurred so some principal reduction was going to be required if the matter was to settle. See exhibit 2 attached and incorporated by reference.  Mr. Vartanian waited until December 17, 2013 to respond, and he only sent what documents had already

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN**                  13
**CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**
**AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF**
**MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

been sent me but falsely called them 'additional'.  See exhibit 3 and note the bata pages because they came with the prior 579 production of documents. This what I was responding to with my email to him contained in his declaration in the opposition.  My email is a bit poorly stated because obviously opposing a motion alone isn't going to stop the settlement if it occurred but as stated above that line if the matter wasn't enforced, than what I am saying is they have continued to fail to provide material discovery should that matter at some point.  This clearly does not mean that further attorney fees have been requested inconsistent with the settlement which was that each side carry their fees and costs.

11.   Section 5 in the points and authorities contains facts that are I reasonably base on information and belief to be true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 2nd day of January, 2014, at Redding, California.

Michael A. Doran
Attorney for Plaintiff

**PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE**

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF DONNA RUTH O'CONNOR-ROSE IN REPLY**

1. I am plaintiff in the above entitled action.  I have personal knowledge of the following.

2.  As I stated in my prior declaration made on December 6, 2013, in reliance on the representations of Mr. Block that the lawsuit had settled, I sold a lot which I intended to build another house on.  It is located on Constitution Way in Redding California.

3. Specifically, the day after the settlement I communicated my desires to Eric Smith, a licensed real estate professional. He in turned on October 29th, 2013 emailed me a PDF form giving him permission to sell that parcel.  See exhibit 4 attached and incorporated by reference.  I signed those documents and had them hand delivered to Mr. Smith.

4.  On November 22, 2013 that property sold.  Attached are the closing documents as exhibit 5.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN         15
CHASE BANK, N.A.'S MEMORANDUM OF POINTS  AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES; DECALATIONS OF
MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

Executed this 2nd day of January, 2014, at Redding, California.

Donna Ruth O'Connor-Rose
Plaintiff

PLAINTIFF DONNA RUTH O'CONNOR-ROSE'S REPLY TO JP MORGAN CHASE BANK, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AWARD OF ATTORNEYS'FEES; DECALATIONS OF MICHAEL DORAN AND PLAINTIFF DONNA RUTH O'CONNOR-ROSE

16

EXHIBIT 1

**RESPONSE:**

Mary A. Oney, Assistant Secretary for Chase, assisted in the preparation of these responses. Ms. Oney may be reached through counsel for Chase.

**INTERROGATORY NO. 2:**

Identify all persons known to you who have knowledge of facts relevant to this case, including but not limited to all persons interviewed by you, by your counsel, or by any person cooperating with you in the defense of this action, and state the subject matter of testimony, giving a brief description thereof, for each person you may call as a witnessing [sic] this case.

**RESPONSE:**

Chase objects to this Interrogatory on the ground that discovery is on-going and Chase cannot conclusively state all the persons who have knowledge of facts that may be relevant to this case because the facts may not yet be known. Subject to but without waiving the foregoing objections, Chase responds as follows:

Chase believes that Plaintiff has knowledge of the facts alleged in the Second Amended Complaint ("SAC"). Additionally, based upon her review of the pay history, which is a business record maintained in Chase's regular course of the business, Mary A. Oney has knowledge of facts relating to Plaintiff's payments on the loan.

**INTERROGATORY NO. 3:**

State your full name, your business purpose, and your form of Business organization.

**RESPONSE:**

Chase objects to this Interrogatory on the grounds that the information requested is equally or publically available to Plaintiff. Subject to but without waiving the foregoing objection, Chase responds as follows:

Law Offices
**Wargo & French LLP**
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
Phone: 310-853-6300

JPMORGAN CHASE BANK. N.A.'S RESPONSES TO INTERROGATORIES

EXHIBIT 2

To Vartanian, Kristapor
Sep 16, 2013

We agreed on the 27th for Donna Rose's depo.

You were going to get back to me on availability for your accounting expert and whether it was agreeable to cover the cost of the video and reporter in exchange for me driving down you to or otherwise it was to be set in my office.

Donna's depo would be in my office.

But over riding all of that with the cut offs in play now was the idea of attempting to resolve this with a modification at 3% with another 2 month continuance of all days and a stay with the attempt to do it. There was concern that the Court would continue discovery etc but not the actual trial date and to put that in the stip as an alternative.

Finally I understand there is a separate response to my demand for the info on the attorney fees, who billed them, as material discovery info.  That too is really moot if we resolve this except even if it resolves my client isn't responsible for the screw up of a firm charging for a NOD when the loan was not and that they should disgorge their fees regardless and that this is subject to State Bar discipline if they do not.

Mike

EXHIBIT 3

# WARGO FRENCH

ATLANTA    LOS ANGELES    MIAMI

KRISTAPOR VARTANIAN
EMAIL: KVARTANIAN@WARGOFRENCH.COM
DIRECT DIAL: (310) 853-6622
FACSIMILE: (310) 853-6333

December 17, 2013

**VIA OVERNIGHT DELIVERY**

Michael Doran, Esq.
1670 Market Street
Suite 122
Redding, California 96001

      RE:    *Donna Ruth O'Connor Rose v. JPMorgan Chase Bank, N.A.,*
            United States District Court for the Eastern District of California,
            Case No. 2:12-cv-00225-WBS-CMK

Dear Mr. Doran:

      Enclosed please find additional documents responsive to Plaintiff's First Set of Requests for Production previously served on JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"), Bates labeled under confidential designation as CHASE000573-CHASE000579.

      Please feel free to contact me with any questions.

                        Sincerely,

                        Kristapor Vartanian

Encl.

## 3270 Explorer: History of Corporate Advance Tran (DDCH)

### JPMORGAN CHASE BANK, N.A. -- 465

Loan Number: 1063027387                          Borrower Name:  ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:35:52
D  ROSE       L:R F:R B:  R:     02/01/12 TYPE CONV. RES.              MAN L
3794 MARIO AVE REDDING CA 96001
------------------------------------------------------------ * MORE *-------
____ C/A PAYEE    ___ TRAN     ____ RSN    ___ USR       _____ ESC PAYEE
  _ SORT          __ SORT        _ SORT      _ SORT        _ SORT
DATE RANGE: _____ THRU _____
                                       C/A
TRN USR DATE      TRAN AMT    ESC PAYEE  PAYEE RSN  DESCRIPTION     ORIG DSB
633 SAP 03/16/13      65.00   MGNVSNATIO 91T11 REAP REO APPRAISAL
633 SAP 03/13/13       5.80   MGCOLLINTE 83N11 REAP REO APPRAISAL
633 SAP 03/13/13      78.00   MGIMORTGA  91T11 IPBP BPO
631 SAP 02/24/12      14.00   MG430809   89T01 CTIN COLLECTION INSPN
631 SAP 01/27/12      14.00   MG430809   89T01 CTIN COLLECTION INSPN
631 SAP 01/20/12      14.00   MG430809   89T01 CTIN COLLECTION INSPN
745 ### 08/22/11     284.42-              91R11 FCTF FC TRUSTEE
745 ### 08/19/11     650.00-              91R11 FCTL TITLE FEES
745 ### 08/18/11      39.64-              91R11 FCML FCL MAIL
745 ### 08/17/11      34.00-              91R11 FCDD FCL DEED
```

CONFIDENTIAL                          CHASE 000573

## 3270 Explorer: History of Corporate Advance Tran (DDCH)

### JPMORGAN CHASE BANK, N.A. -- 465

Loan Number: 1063027387                                    Borrower Name:  ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:36:07
D  ROSE       L:R F:R B:  R:     02/01/12 TYPE CONV. RES.          MAN L
3794 MARIO AVE REDDING CA 96001
------------------------------------------------------------ * MORE *-------
____ C/A PAYEE    ___ TRAN      ____ RSN     ___ USR         ____ ESC PAYEE
    SORT          _  SORT       _  SORT      _  SORT         _  SORT
DATE RANGE:       _____ THRU _____
                                          C/A
TRN USR DATE       TRAN AMT    ESC PAYEE  PAYEE RSN  DESCRIPTION     ORIG DSB
745 ### 08/16/11      20.00-              91R11 FCRC FCL RECORDING
632 SAP 07/16/11      39.64    ATCALIFO   91R11 FCML FCL MAIL
632 SAP 07/16/11      20.00    ATCALIFO   91R11 FCRC FCL RECORDING
632 SAP 07/16/11      17.00    ATCALIFO   91R11 FCDD FCL DEED
632 SAP 07/16/11      17.00    ATCALIFO   91R11 FCDD FCL DEED
632 SAP 07/16/11     650.00    ATCALIFO   91R11 FCTL TITLE FEES
630 SAP 07/16/11     300.00    ATCALIFO   91R11 FCTF FC TRUSTEE
631 SAP 07/01/11      14.00    FSMCS      89T01 FCIN FC INSPECTION
632 SAP 06/14/11      60.00    MGJMADJUST 91T11 FCIN FC INSPECTION
631 SAP 06/10/11      14.00    FSMCS      89T01 PPMC PP MISC
```

CONFIDENTIAL                        CHASE 000574

### 3270 Explorer: History of Corporate Advance Tran (DDCH)

JPMORGAN CHASE BANK, N.A. -- 465

Loan Number: 1063027387

Borrower Name:  ROSE,DONNA

```
DDCH 1063027387    CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:36:11
D  ROSE         L:R F:R B:  R:     02/01/12 TYPE CONV. RES.            MAN L
3794 MARIO AVE REDDING CA 96001
------------------------------------------------------------- * MORE *-------
____ C/A PAYEE    ____ TRAN    ____ RSN    ____ USR        _____ ESC PAYEE
  __ SORT           __ SORT      __ SORT     __ SORT          __ SORT
DATE RANGE: _____ THRU _____
                                         C/A
TRN USR DATE       TRAN AMT   ESC PAYEE   PAYEE RSN  DESCRIPTION     ORIG DSB
631 SAP 04/29/11      14.00   FSMCS       89T01 PPMC PP MISC
632 SAP 04/07/11      60.00   MGJMADJUST  91T11 FCIN FC INSPECTION
631 SAP 03/31/11      14.00   FSMCS       89T01 PPMC PP MISC
631 SAP 03/01/11      14.00   FSMCS       89T01 CTIN COLLECTION INSPN
745 ### 02/02/11      14.00-              89R01 PPMC PP MISC
632 SAP 01/15/11      60.00   MGJMADJUST  91T11 FCIN FC INSPECTION
631 SAP 12/29/10      14.00   FSMCS       89R01 PPMC PP MISC
745 ### 10/29/10      14.00-              89R01 PPMC PP MISC
631 IP1 10/26/10      14.00   FSMCS       89R01 PPMC PP MISC
745 ### 09/27/10      14.00-              91R11 PPMC PP MISC
```

CONFIDENTIAL                  CHASE 000575

## 3270 Explorer: History of Corporate Advance Tran (DDCH)
### JPMORGAN CHASE BANK, N.A. -- 465

**Loan Number:** 1063027387                          **Borrower Name:** ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:36:15
D  ROSE         L:R F:R B:  R:    02/01/12 TYPE CONV. RES.              MAN L
3794 MARIO AVE REDDING CA 96001
-------------------------------------------------------- * MORE *-------
___ C/A PAYEE    ___ TRAN    ___ RSN    ___ USR          ___ ESC PAYEE
___ SORT         ___ SORT    ___ SORT   ___ SORT         ___ SORT
DATE RANGE: _____ THRU _____
                                        C/A
TRN USR DATE      TRAN AMT   ESC PAYEE  PAYEE RSN  DESCRIPTION      ORIG DSB
631 IP1 09/24/10     14.00   FSMCS      91R11 PPMC PP MISC
745 ### 07/23/10     28.00-             91R11 TICO TRAIL INV COSTS
745 ### 07/23/10     28.00              91T11 RCDA DFR ADJUSTMENT
745 ### 07/23/10    138.00              91R11 TICO TRAIL INV COSTS
745 ### 12/24/09    110.00-             91R11 TICO TRAIL INV COSTS
745 ### 12/24/09    540.00-             91R11 FCAT FC ATTY FEE
745 ### 12/24/09     17.00-             91R11 FCRC FCL RECORDING
745 ### 12/24/09    650.00-             91R11 FCTL TITLE FEES
745 ### 12/24/09     28.00-             89R01 REF3 RE FEE 3 CONV
745 ### 12/24/09     23.90-             91R11 FCML FCL MAIL
```

**CONFIDENTIAL**                          CHASE 000576

## 3270 Explorer: History of Corporate Advance Tran (DDCH)

### JPMORGAN CHASE BANK, N.A. -- 465

**Loan Number:** 1063027387                                    **Borrower Name:** ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:36:20
D  ROSE         L:R F:R B:  R:     02/01/12 TYPE CONV. RES.            MAN L
3794 MARIO AVE REDDING CA 96001
------------------------------------------------------------ * MORE *-------
 _____ C/A PAYEE    ___ TRAN      ___ RSN     ___ USR     _____ ESC PAYEE
 _ SORT               ___ SORT      _ SORT      _ SORT      _____ SORT
DATE RANGE: _____ THRU _____
                                         C/A
TRN USR DATE     TRAN AMT   ESC PAYEE  PAYEE RSN  DESCRIPTION      ORIG DSB
745 ### 12/24/09    17.00-             91R11 FCDD FCL DEED
632 IP1 12/17/09   650.00   ATNORTHWE  91R11 FCTL TITLE FEES
632 IP1 12/17/09    17.00   ATNORTHWE  91R11 FCRC FCL RECORDING
632 IP1 12/17/09    23.90   ATNORTHWE  91R11 FCML FCL MAIL
632 IP1 12/17/09    17.00   ATNORTHWE  91R11 FCDD FCL DEED
630 IP1 12/17/09   540.00   ATNORTHWE  91R11 FCAT FC ATTY FEE
633 IP1 12/11/09    14.00   FSMCS      89T01 FCIN FC INSPECTION
633 IP1 11/12/09    14.00   FSMCS      89T01 FCIN FC INSPECTION
745 N8E 10/14/09    14.00-             91T11 CTIN COLLECTION INSPN
745 N8E 10/14/09    14.00              89T01 CTIN COLLECTION INSPN
```

CONFIDENTIAL                    CHASE 000577

## 3270 Explorer: History of Corporate Advance Tran (DDCH)
### JPMORGAN CHASE BANK, N.A. -- 465

**Loan Number:** 1063027387                     **Borrower Name:** ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN   J76/001 04/25/13  13:36:24
D  ROSE          L:R F:R B:  R:    02/01/12 TYPE CONV. RES.            MAN L
3794 MARIO AVE REDDING CA 96001
---------------------------------------------------------- * MORE *-------
____ C/A PAYEE  ____ TRAN   ____ RSN   ___ USR   _____ ESC PAYEE
   SORT           _ SORT      _ SORT    _ SORT      _ SORT
DATE RANGE:  _____ THRU _____
                                          C/A
TRN USR DATE       TRAN AMT   ESC PAYEE  PAYEE RSN  DESCRIPTION     ORIG DSB
633 IP1 10/13/09       14.00  FSMCS      91T11 CTIN COLLECTION INSPN
745 N8E 09/23/09       14.00-            91T11 CTIN COLLECTION INSPN
745 N8E 09/23/09       14.00             89T01 CTIN COLLECTION INSPN
633 IP1 09/18/09       14.00  FSMCS      91T11 CTIN COLLECTION INSPN
745 N8E 08/05/09       14.00-            91T11 CTIN COLLECTION INSPN
745 N8E 08/05/09       14.00-            91T11 CTIN COLLECTION INSPN
745 N8E 08/05/09       14.00             89T01 CTIN COLLECTION INSPN
745 N8E 08/05/09       14.00             89T01 CTIN COLLECTION INSPN
633 IP1 07/23/09       14.00  FSMCS      91T11 CTIN COLLECTION INSPN
633 IP1 07/17/09       14.00  FSMCS      91T11 CTIN COLLECTION INSPN
```

CONFIDENTIAL                          CHASE 000578

## 3270 Explorer: History of Corporate Advance Tran (DDCH)

### JPMORGAN CHASE BANK, N.A. -- 465

Loan Number: 1063027387                                Borrower Name:  ROSE,DONNA

```
DDCH 1063027387   CORPORATE ADVANCE HISTORY SCREEN  J76/001 04/25/13  13:36:28
D  ROSE        L:R F:R B:  R:    02/01/12 TYPE CONV. RES.           MAN L
3794 MARIO AVE REDDING CA 96001
------------------------------------------------------- * END *--------
 _____ C/A PAYEE  _____ TRAN    _____ RSN    _____ USR   _____ ESC PAYEE
 _____ SORT       _____ SORT    _____ SORT   _____ SORT  _____ SORT
DATE RANGE:  _____ THRU _____
                                          C/A
TRN USR DATE       TRAN AMT   ESC PAYEE  PAYEE RSN  DESCRIPTION      ORIG DSB
745 CNV 07/03/09      28.00              89R01 REF3 RE FEE 3 CONV




** BEGINNING CORP ADV BALANCE:             0.00
** TOTAL OF TRANS DISPLAYED ON DDCH:     568.38
** OUTSTANDING CORP ADV BALANCE:         568.38
```

CONFIDENTIAL                          CHASE 000579

EXHIBIT 4



**CALIFORNIA ASSOCIATION OF REALTORS®**

# VACANT LAND LISTING AGREEMENT
### (C.A.R. Form VLL, Revised 7/13)

1. **EXCLUSIVE AUTHORIZATION:** _____ _Donna R O Rose_ _____ ("Owner")
   hereby employs and grants _____ _Sheldon Largent Realty_ _____ ("Broker") beginning
   (date) _October 29, 2013_ and ending at 11:59 P.M. on (date) _August 30, 2013_ ("Listing Period") the
   exclusive and irrevocable right to: ☒ SELL, ☐ LEASE, ☐ EXCHANGE, ☐ OPTION, or ☐ OTHER _____
   the real property in the City of _____ _Redding_ _____ , County of _Shasta_ , California, Assessor's
   Parcel No.: _073-330-018_ , described as: _Parcel 18 Constitution Way_ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and
   fittings that are attached to the Property are included, and personal property items are excluded from the price.
   ADDITIONAL ITEMS EXCLUDED: _____.
   ADDITIONAL ITEMS INCLUDED: _____.
   Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement between
   owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded and included
   in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in
   the Agreement between Owner and transferee.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be _Fifty-Nine Thousand_ _____
      _____ Dollars ($ _59,000.00_ ).
   B. Additional Terms: _____

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may
   be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☒ _8.000_ percent of the
      listing price (or if an agreement is entered into, of the contract price), ☐ $ _____ , OR ☐ in accordance
      with Broker's attached schedule of compensation; as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready, willing,
          and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Owner, provided the Buyer
          completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any escrow
          resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      (2) If within _____ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell,
          lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's
          related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or a
          cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire,
          lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this paragraph
          4A(2) unless, not later than **3 calendar days** after the end of the Listing Period or any extension thereof, Broker has given
          Owner a written notice of the names of such Prospective Transferees.
      (3) If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified in
          paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable by a
          voluntary act of Owner during the Listing Period, or any extension thereof.
   B. If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under
      paragraph 4A shall be payable only if and when Owner collects damages by suit, arbitration, settlement, or otherwise, and then in
      an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and
      escrow expenses and the expenses of collection, if any.
   C. In addition, Owner agrees to pay Broker: _____
   D. (1) Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i)
          by offering MLS brokers either: ☒ _4.000_ percent of the purchase price, or ☐ $ _____ ; OR (ii)
          (if checked) ☐ as per Broker's policy.
      (2) Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   E. Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may
      submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the
      Property involving Owner and a buyer, transferee or Prospective Transferee.
   F. (1) Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the Property,
          unless specified as follows: _____
      (2) Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the
          Property is transferred to any of the following Prospective Transferees: _____
      (3) If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i) Broker
          is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in such
          transaction.

© 2013, California Association of REALTORS®, Inc.

**VLL REVISED 7/13 (PAGE 1 OF 5)**

Owner's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

**VACANT LAND LISTING AGREEMENT (VLL PAGE 1 OF 5)**

| Agent: Eric Smith | Phone: 530-945-4144 | Fax: 530.282.1757 | Prepared using zipForm® software |
|---|---|---|---|
| Broker: Sheldon Largent Realty 3570 Rancho Rd., Ste 1 Redding | , CA 96002 | | |

*Parcel 18 Constitution Way*

Property Address: *Redding,* _____ Date: *October 29, 2013*

**5. MULTIPLE LISTING SERVICE:**

   **A.** Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property is not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Owner's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to an owner, and why, should be discussed with the agent taking the Owner's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Owner elects to exclude the Property from the MLS, Owner understands and acknowledges that: **(a)** real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Owner's Property is offered for sale; **(b)** Information about Owner's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; **(c)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Owner is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Owner understands that Broker must present all offers received for Owner's Property unless Owner gives Broker written instructions to the contrary.

| Owner's Initials _____ / _____ | Broker's Initials _____ / _____ |
|---|---|

---

   **B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Owner (C.A.R. Form SELM or the local equivalent form).

   **C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Owner acknowledges that for any of the below opt-out instructions to be effective, Owner must make them on a separate instruction to Broker signed by Owner (C.A.R. Form SELI or the local equivalent form). Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
   **(1) Property Availability:** Owner can instruct Broker to have the MLS not display the Property on the Internet.
   **(2) Property Address:** Owner can instruct Broker to have the MLS not display the Property address on the Internet. Owner understands that the above opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
   **(3) Feature Opt-Outs:** Owner can instruct Broker to advise the MLS that Owner does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Owner understands **(i)** that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; **(ii)** that other Internet sites may or may not have the features set forth herein; and **(iii)** that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
   **(a) Comment And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property.
   **(b) Automated Estimate Of Value:** The ability to link to another site containing such automated estimate of value if the link is in immediate conjunction with the Property.

Owner's Initials ( _____ ) ( _____ )

| Reviewed by ____ Date _____ |
|---|

**VACANT LAND LISTING AGREEMENT (VLL PAGE 2 OF 5)**

Lot 18 Constit

*Parcel 18 Constitution Way*

Property Address: Redding, _____ Date: *October 29, 2013*

6. **OWNER REPRESENTATIONS:** Owner represents that, unless otherwise specified in writing, Owner is unaware of: **(i)** any Notice of Default recorded against the Property; **(ii)** any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; **(iii)** any bankruptcy, insolvency or similar proceeding affecting the Property; **(iv)** any litigation, arbitration, administrative action, government investigation, or other pending or threatened action that affects or may affect the Property or Owner's ability to transfer it; and **(v)** any current, pending or proposed special assessments affecting the Property. Owner shall promptly notify Broker in writing if Owner becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND OWNER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Listing Agreement. Unless Owner gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary, and advertise and market the Property in any method and medium, including the Internet, selected by Broker, and, to the extent permitted by these media, including MLS, control the dissemination of the information submitted to any medium. Owner agrees to consider offers presented by Broker, and to act in good faith toward accomplishing the transfer of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Owner agrees to provide Broker and transferee(s) all written disclosures, as required by law. Owner further agrees to immediately disclose in writing any condition known to Owner that affects the Property, including, but not limited to, any past or current generation, storage, release, threatened release, disposal, and presence and location of asbestos, PCB transformers, petroleum products, flammable explosives, underground storage tanks and other hazardous, toxic or contaminated substances or conditions in, on, or about the Property. Owner shall maintain public liability and property damage insurance on the Property during the Listing Period or any extension. Owner waives all subrogation rights under any insurance against Broker, cooperating brokers or employees. Owner is responsible for determining at what price to list and transfer the Property. **Owner further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Owner, or from any material facts that Owner knows but fails to disclose.** ☐ **(If checked)** The attached property disclosure is part of this Listing Agreement and may be provided to Prospective Transferees.

8. **DEPOSIT:** Broker is authorized to accept and hold on Owner's behalf any deposits to be applied toward the contract price.

9. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** If the Property includes residential property with one to four dwelling units and this Listing Agreement is used to list the Property for sale, exchange or lease for a period of greater than one year, a "Disclosure Regarding Agency Relationships" (C.A.R. Form AD) is required to be provided to Owner prior to entering into this Listing Agreement.
   B. **Owner Representation:** Broker shall represent Owner in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Owner and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Owner any election to act as a dual agent representing both Owner and Buyer. If a Buyer is procured directly by Broker or an associate licensee in Broker's firm, Owner hereby consents to Broker acting as a dual agent for Owner and such Buyer. In the event of an exchange, Owner hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Owner understands and agrees that: **(i)** Broker, without the prior written consent of Owner, will not disclose to Buyer that Owner is willing to transfer the Property at a price less than the listing price; **(ii)** Broker, without the prior written consent of Buyer, will not disclose to Owner that Buyer is willing to pay a price greater than the offered price; and **(iii)** except for **(i)** and **(ii)** above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Other Owners:** Owner understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or acquire through Broker, property the same as or similar to Owner's Property. Owner consents to Broker's representation of owners and buyers of other properties before, during, and after the end of this Listing Agreement.
   E. **Confirmation:** If the Property includes residential property with one to four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Owner's execution of an agreement to sell.

10. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of the Property. Owner agrees: **(i)** to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and **(ii)** to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Owner.

11. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors and accompanying prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism, or damage attributed to the use of a keysafe/lockbox. Owner does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Owner does not occupy the Property, Owner shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

12. **SIGN:** Owner authorizes Broker to install a FOR SALE/SOLD/LEASE sign on the Property unless otherwise indicated in writing.

13. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

14. **ATTORNEY'S FEES:** In any action, proceeding, or arbitration between Owner and Broker regarding the obligation to pay compensation under this Listing Agreement, the prevailing Owner or Broker shall be entitled to reasonable attorney's fees and costs, except as provided in paragraph 18A.

15. **ADDITIONAL TERMS:** ☐ REOL ☐ SSIA _____
_____
_____
_____
_____
_____

Owner's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

**VLL REVISED 7/13 (PAGE 3 OF 5)**

**VACANT LAND LISTING AGREEMENT (VLL PAGE 3 OF 5)**

Lot 18 Constit

*Parcel 18 Constitution Way*
Property Address: *Redding,* _____   Date: *October 29, 2013*
_____

16. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Listing Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Listing Agreement, in writing, within 5 days after its execution.

17. **SUCCESSORS AND ASSIGNS:** This Listing Agreement shall be binding upon Owner and Owner's successors and assigns.

18. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Owner and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 18C.

B. **ARBITRATION OF DISPUTES:**
Owner and Broker agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 18C.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

| Owner's Initials _____ / _____ | Broker's Initials _____ / _____ |
|---|---|

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

Owner's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____



**VACANT LAND LISTING AGREEMENT (VLL PAGE 4 OF 5)**

EQUAL HOUSING OPPORTUNITY

Lot 18 Constit

*Parcel 18 Constitution Way*
Property Address: *Redding.* _____ Date: *October 29, 2013*

19. **ENTIRE CONTRACT:** All prior discussions, negotiations, and agreements between the parties concerning the subject matter of this Listing Agreement are superseded by this Listing Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Listing Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in counterparts.

20. **OWNERSHIP, TITLE AND AUTHORITY:** Owner warrants that: (i) Owner is the owner of the Property; (ii) no other persons or entities have title to the Property, and (iii) Owner has the authority to both execute this Listing Agreement and transfer the Property. Exceptions to ownership, title and authority are as follows: _____

**By signing below, Owner acknowledges that Owner has read, understands, received a copy of and agrees to the terms of this Listing Agreement and any attached schedule of compensation.**

Date _____ at _____
Owner _____
By *Donna R O Rose* _____ Title _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ Email _____

Date _____ at _____
Owner _____
By _____ Title _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ Email _____

Date _____ at _____
Owner _____
By _____ Title _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ Email _____

Real Estate Broker (Firm) *Sheldon Largent Realty* _____ BRE Lic. # _____
By (Agent) _____ *Eric Smith* BRE Lic. # *01364274* Date *10/29/2013*
Address *3570 Rancho Rd., Ste 1* _____ City *Redding* _____ State *CA* Zip *96002*
Telephone *(530) 945-4144* Fax *(530) 282-1757* Email *eesmith19@gmail.com*

© 2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**VLL REVISED 7/13 (PAGE 5 OF 5)**

Reviewed by _____ Date _____



Lot 18 Constit

**VACANT LAND LISTING AGREEMENT (VLL PAGE 5 OF 5)**



**CALIFORNIA ASSOCIATION OF REALTORS®**

### DISCLOSURE AND CONSENT FOR REPRESENTATION OF MORE THAN ONE BUYER OR SELLER
(C.A.R. Form DA, 11/06)

A real estate broker, whether a corporation, partnership or sole proprietorship, ("Broker") may represent more than one buyer or seller provided the Broker has made a disclosure and the principals have given their consent. This multiple representation can occur through an individual licensed as a broker or through different associate licensees acting for the Broker. The associates licensees may be working out of the same or different office locations.

Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

Buyer and Seller understand that Broker may represent more than one buyer or seller and even both buyer and seller on the same transaction.

If Seller is represented by Broker, Seller acknowledges that Broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both Seller and Buyer in that transaction.

If Buyer is represented by Broker, Buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both Buyer and Seller with regard to that property.

In the event of dual agency, Seller and Buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to Seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the Seller, will not disclose to the Buyer that Seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a Dual Agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms, or conditions of Buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller.

**Seller and/or Buyer acknowledges reading and understanding this Disclosure and Consent for Representation of More Than One Buyer or Seller and agrees to the dual agency possibility disclosed.**

[X] Seller [ ] Buyer _____ Date _____
Donna R O Rose

[ ] Seller [ ] Buyer _____ Date _____

Real Estate Broker (Firm) *Sheldon Largent Realty*    BRE Lic # _____

By _____ BRE Lic # _01364274_ Date _10/29/2013_
Eric Smith

© 2013, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____ 

DA 11/06 (PAGE 1 OF 1)
### REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (DA PAGE 1 OF 1)

Agent: Eric Smith    Phone: 530-945-4144    Fax: 530.282.1757    Prepared using zipForm® software
Broker: Sheldon Largent Realty 3570 Rancho Rd., Ste 1 Redding    , CA 96002



**CALIFORNIA ASSOCIATION OF REALTORS®**

# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
### (Listing Firm to Seller)
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 11/12)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest in a dwelling exceeding one year as per Civil Code section 2079.13(j) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date _____
                           *Donna R O Rose*

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____*Sheldon Largent Realty*_____ BRE Lic. # _____
                  Real Estate Broker (Firm)

By _____ BRE Lic. # *01364274* ___ Date *10/29/2013*
   (Salesperson or Broker-Associate) *Eric Smith*

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

**(SELLER/LANDLORD: DO NOT SIGN HERE)**          **(SELLER/LANDLORD: DO NOT SIGN HERE)**
Seller/Landlord _____ Date _____ | Seller/Landlord _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

AD REVISED 11/12 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

| Agent: Eric Smith | Phone: 530-945-4144 | Fax: 530.282.1757 | Prepared using zipForm® software |
| Broker: Sheldon Largent Realty 3570 Rancho Rd., Ste 1 Redding | , CA 96002 | | |

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(f)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(n)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(o)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.
**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.
**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
**(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

| | | |
|---|---|---|
| **(DO NOT COMPLETE, SAMPLE ONLY)** | is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller. | |
| (Name of Listing Agent) | | |
| **(DO NOT COMPLETE, SAMPLE ONLY)** | is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or | |
| (Name of Selling Agent if not the same as the Listing Agent) | ☐ both the buyer and seller. | |

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.
**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.


Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 11/12 (PAGE 2 OF 2)**     | Reviewed by _____ Date _____ |     Lot 18 Consti

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

EXHIBIT 5



# Fidelity National Title Company
## OF CALIFORNIA

2070 Churn Creek Road, Suite C, Redding, CA 96002
530 221-8611 • FAX 530 221-2748

**DATE:** November 20, 2013
**ESCROW NO.:** 13-**153108**-MP
**LOCATE NO.:** CAFNT0945-0945-0003-0000153108
**ESCROW OFFICER:** Michelle Padilla

**TIME:** 4:25 PM

**CLOSING DATE:** November 22, 2013

## SELLER ESTIMATED CLOSING STATEMENT

**SELLER:** Donna Ruth O'Conner Rose
**BUYER:** Kelly Shane Ballensky  and Tina C. Tang
**PROPERTY:** 5697 Constitution Way, Redding, CA  96003

|  | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| Total Consideration | | 49,415.00 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Prepaid County Taxes at $79.12 Semi-Annual from 11/22/2013 to 1/1/2014 | | 17.14 |
| **TITLE CHARGES:** | | |
| County Transfer Tax | 54.45 | |
| 01-O-CLTA Standard - 1990 for $49,415.00 | 200.00 | |
| **ESCROW CHARGES:** | | |
| Escrow Fee to Fidelity National Title | 137.50 | |
| Draw Deed | 50.00 | |
| Notary Fees | 10.00 | |
| **COMMISSIONS:** | | |
| Listing Brokers Commission to Sheldon Largent Realty 4.00% | 1,976.60 | |
| Selling Brokers Commission to Platinum Properties 4.00% | 1,976.60 | |
| **MISCELLANEOUS:** | | |
| First American Natural Hazard Disclosures for Natural Hazards Disclosure | 55.00 | |
| Shasta County Tax Collector for 1st installment 13/14 073-330-018-000 | 79.12 | |
| Shasta County Tax Collector for Supplementals 073-330-018-000 | 25.92 | |
| Shasta County Tax Collector for Supplementals 073-330-018-000 | 312.60 | |
| ESTIMATED NET PROCEEDS DUE SELLER | $44,554.35 | |
| ESTIMATED TOTALS | $49,432.14 | $49,432.14 |

Initials 

Date:  November 20, 2013
Escrow No.:  13-**153108**-MP
Locate No.:  CAFNT0945-0945-0003-0000153108

The Undersigned hereby instruct and authorize Escrow Holder to disburse proceeds/refund as follows:

[ ]    TRANSFER        [ ] All Net Proceeds/Refund, or  [ ] $_____

    TO:                _____

    ATTN:            _____

    ESCROW NUMBER:  _____

[ ]    HOLD check for PICK UP

[ ]    CALL when check is ready for PICK UP, PHONE NUMBER: _____

[X]    WIRE funds to (Bank Name): _North Valley Valley_

    Bank Address: _____

    Account Holder Name: _____

    Routing Number: _____

    Account Number: _0165 7971 6_

For further credit to: _____

Account Number: _____

[ ]    MAIL    [ ] FEDERAL EXPRESS check to: _____

Date:  _11/21/13_

_Donna Ruth O'Conner Rose_

Donna Ruth O'Conner Rose

First American Natural Hazard Disclosures
P.O. Box 27429
Santa Ana, CA 92799

**Report number :**1435753
**Date :** 11/20/2013

# First American

## Natural Hazard Disclosures Order Invoice

**DELIVER TO:**

# FIDELITY NATIONAL TITLE
**2070 CHURN CREEK ROAD**
**REDDING, CA 96002**

**Escrow Number:**
**Officer: MICHELLE PADILLA**
**APN: 073-330-018-000**
**Subject Property:**

**Attn: ESCROW**

5697 Constitution Way
Redding, CA, 96003

READ AND APPROVED
BY
BY
DATE

| Date | Product Name | Total |
|------|-------------|-------|
| 11/20/2013 | FANHD Report | $ 55.00 |

**Please reference First American Natural Hazard Disclosures Report Number 1435753 on the check**

Demand is hereby made on the above referenced escrow for disclosure services. This demand is due and payable upon the close of escrow. If for any reason escrow is transferred to another account, please fax the new information to us at (800) 329-9527. We will submit the invoice to the new escrow company. If for any reason this escrow is canceled, please contact us immediately. We will forward the invoice to the responsible party.

*NOTE: IF ESCROW HAS CLOSED AND REPORT FEES REMAIN OUTSTANDING, ORDERING AGENT WILL BE BILLED.*

*NOTE: THE REPORT'S LIABILITY PROVISIONS DO NOT APPLY UNTIL WE RECEIVE PAYMENT IN FULL.*

**Please return bottom portion with your payment.   Please do not staple check to stub**

Received From:
FIDELITY NATIONAL TITLE

073-330-018-000

5697 Constitution Way

Escrow Number:

Redding, CA 96003

Make check payable to:

**Invoice  1435753**

**First American Natural Hazard Disclosures**

**P.O. Box 27429**

**Santa Ana, CA  92799**

**AMOUNT DUE**

**$ 55.00**

If there are any billing questions, please
contact our customer service department at
(800) 527-0027. Thank you.

1435753055001



Visit Us on our Website: *www.fntic.com*

# Fidelity National Title Company
OF CALIFORNIA

*ISSUING OFFICE:* 11050 Olson Dr., Suite 200 • Rancho Cordova, CA  95670

*FOR SETTLEMENT INQUIRIES, CONTACT:*  Fidelity National Title Company of California - Redding Churn Creek
2070 Churn Creek Road, Suite C • Redding, CA  96002
530 221-8611 • FAX 530 221-2748

## PRELIMINARY REPORT

| | |
|---|---|
| Title Officer:  Jeff VanValer | Title No.:  13-**153108**-JV |
| Escrow Officer:  Michelle Padilla | Locate No.:  CAFNT0945-0945-0003-0000153108 |
| Escrow No.:  13-**153108**-MP | |

TO:     Platinum Properties

        Redding, CA  96002

        ATTN:  Mike Ortega

**PROPERTY ADDRESS:**   5697 Constitution Way, Redding, California

**EFFECTIVE DATE:  November 13, 2013, 07:30 A.M.**

The form of policy or policies of title insurance contemplated by this report is:

    CLTA Standard Coverage Policy - 1990

1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY
        THIS REPORT IS:

        A Fee

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

        **Donna Ruth O'Connor Rose, an unmarried woman**

3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

        SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

                                                        NA\NA   11/20/2013





1

CLTA Preliminary Report Form - Modified (11/17/06)

Title No. 13-**153108**-JV
Locate No. CAFNT0945-0945-0003-0000153108

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF REDDING, COUNTY OF SHASTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 8 AS SHOWN ON THE MAP OF BLOSSOM PARK SUBDIVISION NO. S-13-86, UNIT 2, FILED IN THE OFFICE OF THE COUNTY RECORDER ON APRIL 10, 1990 IN BOOK 19 OF MAPS AT PAGE 66, SHASTA COUNTY RECORDS.

APN: 073-330-018-000

2

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

    Code Area:                001-021
    Tax Identification No.:   073-330-018-000
    Fiscal Year:              2013-2014
    1st Installment:          $79.12, Open
    2nd Installment:          $79.12, Open
    Exemption:                $0.00
    Land:                     $15,000.00
    Improvements:             $0.00
    Personal Property:        $0.00
    Bill No.:
    Tracer No.:

    Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

2.  Supplemental assessment for 2012-2013:

    1st Installment:          $12.96, Open
    Must be Paid By:          December 10, 2013
    2nd Installment:          $12.96, Open
    Must be Paid By:          April 10, 2014
    Bill No.:                 990-101-360-000
    Tracer No.:

    Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

3.  Supplemental assessment for 2013-2014:

    1st Installment:          $156.30, Open
    Must be Paid By:          December 10, 2013
    2nd Installment:          $156.30, Open
    Must be Paid By:          April 10, 2014
    Bill No.:                 991-101-360-000
    Tracer No.:

    Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

4.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (Commencing with Section 75) of the Revenue and Taxation Code of the State of California.

3

ITEMS: (continued)

Title No. 13-**153108**-JV
Locate No. CAFNT0945-0945-0003-0000153108

5.     Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract/plat;

       Purpose:                  Public services
       Affects:                    Front 5 feet

6.     **Notes, Recitals, Legends and/or Conditions** as contained on the herein mentioned Map.

7.     Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

       Recording Date:         May 1, 1990
       Recording No.:         1990-0018153, Book 2592, Page 673,  of Official Records

       Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

       Modification(s) of said covenants, conditions and restrictions

       Recording Date:         September 21, 1990
       Recording No.:         1990-0041352, Book 2644, Page 123,  of Official Records

       Modification(s) of said covenants, conditions and restrictions

       Recording Date:         July 29, 1991
       Recording No.:         1991-0031252, Book 2746, Page 62,  of Official Records

8.     Please be advised that our search did not disclose any open Deeds of Trust of record.  If you should have knowledge of any outstanding obligation, please contact the Title Department immediately for further review prior to closing.

9.     Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the Public Records.

       The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

       The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

CLTA Preliminary Report Form - Modified (11/17/06)

ITEMS: (continued)                                              Title No. 13-**153108**-JV
                                          Locate No. CAFNT0945-0945-0003-0000153108

10.   Information has been provided to the Company which discloses that a work of improvement is
      contemplated, in progress or recently completed. To assist the Company in determining if it can give
      the priority coverage contained within the policy contemplated by this report, please provide the
      following:

      a)   Current Financial Statement and/or Current Loan Application.
      b)   Project Cost Breakdown.
      c)   Completed Loss of Priority Questionnaire. (This form furnished by the Company.)
      d)   A fully executed Indemnity Agreement. (This form furnished by the Company.)
      e)   If work has commenced prior to the recordation of the Construction Deed of Trust, there will be
           further requirements and the closing of the transaction could be delayed.
      f)   Copy of current appraisal
      g)   Copy of loan agreement and disbursement schedules
      h)   Name of Fund Control/Disbursement Agent

      Work may include, among other things, any preparation of the site for the planned construction,
      delivery of construction materials or equipment and any labor furnished.

      The Company reserves the right to add additional items and/or make further requirements after
      review of the requested documentation.

11.   In order to complete this report, the Company requires a Statement of Information to be completed
      by the following party(s),

      Party(s):          Donna Ruth O'Connor Rose

      The Company reserves the right to add additional items or make further requirements after review of
      the requested Statement of Information.

      NOTE:  The Statement of Information is necessary to complete the search and examination of title
      under this order.  Any title search includes matters that are indexed by name only, and having a
      completed Statement of Information assists the Company in the elimination of certain matters which
      appear to involve the parties but in fact affect another party with the same or similar name. Be
      assured that the Statement of Information is essential and will be kept strictly confidential to this file.

12.   In order to complete this report, the Company requires a Statement of Information to be completed
      by the following party(s),

      Party(s):          Kelly Shane Ballensky

      The Company reserves the right to add additional items or make further requirements after review of
      the requested Statement of Information.

      NOTE:  The Statement of Information is necessary to complete the search and examination of title
      under this order.  Any title search includes matters that are indexed by name only, and having a
      completed Statement of Information assists the Company in the elimination of certain matters which
      appear to involve the parties but in fact affect another party with the same or similar name. Be
      assured that the Statement of Information is essential and will be kept strictly confidential to this file.

                                        **END OF ITEMS**

                                              5

                                    CLTA Preliminary Report Form - Modified (11/17/06)

Title No. 13-**153108**-JV
Locate No. CAFNT0945-0945-0003-0000153108

**Note 1.**     Note: The current owner does NOT qualify for the $20.00 discount pursuant to the coordinated stipulated judgments entered in actions filed by both the Attorney General and private class action plaintiffs, for the herein described Land.

**Note 2.**     The name(s) of the proposed insured(s) furnished with this application for title insurance is/are:

Name(s) furnished:     Kelly Shane Baliensky and Tina C. Tang

If these name(s) are incorrect, incomplete or misspelled, please notify the Company.

**Note 3.**     The only conveyance(s) affecting said Land, which recorded within 24 months of the date of this report, are as follows:

Grantor:              Riad A. Chehab and Shelley A. Chehab, husband and wife as community property with right of survivorship
Grantee:              Donna Ruth O'Connor Rose, an unmarried woman
Recording Date:       May 17, 2013
Recording No.:        2013-0018435, of Official Records

**Note 4.**     Your application for title insurance was placed by reference to only a street address or tax identification number. Based on our records, we believe that the legal description in this report covers the parcel(s) of Land that you requested. If the legal description is incorrect, the seller/borrower must notify the Company and/or the settlement company in order to prevent errors and to be certain that the correct parcel(s) of Land will appear on any documents to be recorded in connection with this transaction and on the policy of title insurance.

**Note 5.**     Note: If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

**Note 6.**     Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirement cannot be met, please call the Company at the number provided in this report.

**END OF NOTES**

6

CLTA Preliminary Report Form - Modified (11/17/06)



This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances or acreage shown thereon.

*Donna*

# STATEMENT OF INFORMATION
## CONFIDENTIAL INFORMATION FOR YOUR PROTECTION

Completion of this statement expedites your application for title insurance, as it assists in establishing identity, eliminating matters affecting persons with similar names and avoiding the use of fraudulent or forged documents. Complete all blanks (please print) or indicate "none" or "N/A." If more space is needed for any item(s), use the reverse side of the form. Each party (and spouse/domestic partner, if applicable) to the transaction should personally sign this form.

ESCROW NO.: **13-153108**-MP          LOCATE NO.: **CAFNT0945-0945-0003-0000153108**          TITLE NO.: **13-153108**-JV

### NAME AND PERSONAL INFORMATION

*Donna* *Ruth* *O'Connor Rose* *O'Connor* Date of Birth *10/5/63*

First Name          Middle Name          Last Name          Maiden Name
(If none, indicate)

Home Phone _____ Business Phone _____ Cell Phone _____

Birthplace _____ Social Security No. *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* Driver's License No. *C1511587*

List any other name you have used or been known by _____

State of residence *3794 Mario Ave. Rdg CA 96001* I have lived continuously in the U.S.A. since _____

Are you currently married? _____ If yes, complete the following information:

Date and place of marriage _____

Spouse: _____ Date of Birth _____
          First Name          Middle Name          Last Name          Maiden Name
(If none, indicate)

Home Phone _____ Business Phone _____ Cell Phone _____

Birthplace _____ Social Security No. _____ Driver's License No. _____

List any other names you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

Are you currently a registered domestic partner? _____ If yes, complete the following information:

Domestic Partner: _____ Date of Birth _____
          First Name          Middle Name          Last Name          Maiden Name
(If none, indicate)

Home Phone _____ Business Phone _____ Cell Phone _____

Birthplace _____ Social Security No. _____ Driver's License No. _____

List any other names you have used or been known by _____

State of residence _____ I have lived continuously in the U.S.A. since _____

*************************************************************************************

### CHILDREN

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____

Child Name: _____ Date of Birth: _____ Child Name: _____ Date of Birth: _____
(If more space is required, use reverse side of form)

*************************************************************************************

### RESIDENCES (LAST 10 YEARS)

| Number & Street | City | From (date) to (date) |
|---|---|---|
| Number & Street | City | From (date) to (date) |

(If more space is required, use reverse side of form)

*************************************************************************************

### OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business name | Address | From (date) to (date) |

(If more space is required, use reverse side of form)

UE-34 (Rev. 07-13)
Statement of Information (statinfo) (10-03) (Rev. 07-13)

Page 1 of 2

ESCROW NO.: **13-153108**-MP          LOCATE NO.: **CAFNT0945-0945-0003-0000153108**          TITLE NO.: **13-153108**-JV

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SPOUSE'S/DOMESTIC PARTNER'S OCCUPATIONS/BUSINESSES (LAST 10 YEARS)

| Firm or Business name | Address | From (date) to (date) |
|---|---|---|
| Firm or Business name | Address | From (date) to (date) |

(If more space is required, use reverse side of form)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PRIOR MARRIAGE(S)

Any prior marriages for either spouse? _____ If yes, complete the following:

Prior spouse's (Party A) name: _____ Prior Spouse of Party A: _____

Marriage terminated by:  Death _____ Divorce _____ Date of termination _____

Prior spouse's (Party B) name: _____ Prior Spouse of Party B: _____ Spouse _____

Marriage terminated by:  Death _____ Divorce _____ Date of termination _____

(If more space is required, use reverse side of form)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PRIOR DOMESTIC PARTNERSHIP(S)

Any prior domestic partnerships for either person? _____ If yes, complete the following:

Prior partner's name: _____ Prior Partner: _____

Partnership terminated by:  Death _____ Dissolution _____ Nullification _____ Termination _____ Date of termination _____

Prior partner's name: _____ Prior Partner: _____

Partnership terminated by:  Death _____ Dissolution _____ Nullification _____ Termination _____ Date of termination _____

(If more space is required, use reverse side of form)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### INFORMATION ABOUT THE PROPERTY

Buyer intends to reside on the property in this transaction:  Yes _____  No _____

### Owner to complete the following items

Street Address of Property in this transaction:   5697 Constitution Way, Redding, CA  96003

The land is unimproved _____; or improved with a structure of the following type:  A Single or 1-4 Family _____ Condo Unit _____ Other _____

Improvements, remodeling or repairs to this property have been made within the past six months:  Yes _____  No _____

If yes, have all costs for labor and materials arising in connection therewith been paid in full?  Yes _____  No _____

Any current loans on property? _____ If yes, complete the following:

Lender _____ Loan Amount _____ Loan Account # _____

Lender _____ Loan Amount _____ Loan Account # _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The undersigned declare, under penalty of perjury, that the foregoing is true and correct.

Executed on  11/21/13 _____ , _____ at _____

Signature  *Donna Ruth O'Connor Rose*          Signature _____

(Note:  If applicable, both spouses/domestic partners must sign.)

**THANK YOU.**

UE-34
Statement of Information (statinfo)

Page 2 of 2

**RECORDING REQUESTED BY:**
Fidelity National Title Company of California
Escrow No.: 13-153108-MP
Locate No.: CAFNT0945-0945-0003-0000153108
Title No.: 13-153108-JV

**When Recorded Mail Document
and Tax Statement To:**
Mr. and Mrs. Kelly Shane Ballensky
5697 Constitution Way
Redding, CA 96003

APN: 073-330-018-000

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

**The undersigned grantor(s) declare(s)**
**Documentary transfer tax is $54.45**
[  X  ]    computed on full value of property conveyed, or
[     ]    computed on full value less value of liens or encumbrances remaining at time of sale,
[     ]    Unincorporated Area    City of **Redding**,

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**  Donna Ruth O'Conner Rose, an unmarried woman

**hereby GRANT(S) to**   Kelly Shane Ballensky and Tina C. Tang, husband and wife as joint tenants

**the following described real property in the** City of **Redding**, County of **Shasta**, State of **California**:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED:  November 20, 2013

State of California
County of _____ )

On _____ before me,
_____, Notary Public
(here insert name and title of the officer), personally appeared
_____,

_Donna Ruth O'Conner Rose_
Donna Ruth O'Conner Rose

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev 12/07)                              GRANT DEED
(grant) (10-03) (Rev. 07-11)

**Escrow No.:** 13-**153108**-MP
**Locate No.:** CAFNT0945-0945-0003-0000153108
**Title No.:** 13-**153108**-JV

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF REDDING, COUNTY OF SHASTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 8 AS SHOWN ON THE MAP OF BLOSSOM PARK SUBDIVISION NO. S-13-86, UNIT 2, FILED IN THE OFFICE OF THE COUNTY RECORDER ON APRIL 10, 1990 IN BOOK 19 OF MAPS AT PAGE 66, SHASTA COUNTY RECORDS.

APN: 073-330-018-000



# Fidelity National Title Company
OF CALIFORNIA

2070 Churn Creek Road, Suite C, Redding, CA  96002
530 221-8611 • FAX 530 221-2748

## PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
## ARE HEREBY AMENDED AND/OR SUPPLEMENTED
## IN THE FOLLOWING PARTICULARS ONLY:

To:                      Fidelity National Title Company of California
Date:                    November 20, 2013
Escrow No.:              13-**153108**-MP
Locate No.:              CAFNT0945-0945-0003-0000153108
Property Address:        5697 Constitution Way, Redding, CA  96003

The instructions in this escrow are hereby modified, amended and/or supplemented in the following particulars only:

**Acknowledgement:**  All parties (Sellers and Buyers) have acknowledged receipt of Escrow Holder's executed Acceptance and that all agreements, counter offers and any addendums have been deposited with Escrow Holder and that there are no other outstanding agreements, counter offers and/or addendums which effect the closing of this transaction.  Fidelity National Title Company of California is relieved of any and all responsibility/liability and will be held harmless as it relates to said documents not deposited to escrow.

1.   **Approval of Legal Description for Subject Property:**  Seller(s) signature(s) on the conveying Grant Deed, and Buyer(s) approval of the Preliminary Report, shall be deemed as each party's approval of the legal description contained therein as the exact description for the subject property of this escrow and Escrow Holder may rely upon such approval in processing this transaction.
     SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

2.   **Policy of Title Insurance:**  An ALTA Homeowners Policy of Title Insurance will be issued by Fidelity National Title Insurance Company at the close of escrow.

3.   **Purchase Price:**  The purchase price for the subject property is **$49,415.00**.

4.   **Close of Escrow:**  Close of escrow to be on or before **November 22, 2013**, or thereafter, unless revoked by written demand on you by the undersigned.

## GENERAL INSTRUCTIONS:

1.   Seller is aware that interest on the existing loan(s) does not stop accruing at close of escrow, but continues until the actual day of receipt of the payoff by Lender.

     Seller is aware that interest will accrue through weekends or holidays.

     Seller is aware he/she/they are responsible for payment of all of such interest and will indemnify and hold Escrow Holder harmless in connection with the payment of such interest.

2.   In accordance with Section 18662 of the Revenue and Taxation Code, a Buyer may be required to withhold an amount equal to 3 1/3 percent of the sales price or an alternative withholding amount certified by the Seller in the case of a disposition of California real property interest by either:

Continued on Following Page
CAR 2000 Amendment (ncarins) (06-05) (Rev. 08-13)

Initials: _____

a.   A Seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the Seller, OR
b.   A Corporate Seller that has no permanent place of business in California immediately after the transfer of title to the California property.

The Buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).

However, notwithstanding any other provision included in the California statutes referenced above, no Buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following apply:

a.   The sales price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000).
b.   The Seller executes a written certificate, under the penalty of perjury, certifying that the Seller is a corporation with a permanent place of business in California.
c.   The Seller, who is an individual, trust, estate, or a corporation without a permanent place of business in California, executes a written certificate, under the penalty of perjury, of any of the following:

i.    The California real property being conveyed is the Seller's or Decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code).
ii.   The last use of the property being conveyed was use by the Transferor as the Transferor's principal residence (within the meaning of Section 121 of the Internal Revenue Code).
iii.  The California real property being conveyed is or will be exchanged for property of like kind (within the meaning of Section 1031 of the Internal Revenue Code), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
iv.   The California real property has been compulsorily or involuntarily converted (within the meaning of Section 1033 of the Internal Revenue Code) and that the Seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
v.    The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

The Seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

THE PARTIES TO THIS TRANSACTION SHOULD SEEK THE PROFESSIONAL ADVICE AND COUNSEL OF AN ATTORNEY, ACCOUNTANT OR OTHER TAX SPECIALIST'S OPINION CONCERNING THE EFFECT OF THIS LAW ON THIS TRANSACTION AND SHOULD NOT ACT ON ANY STATEMENTS MADE OR OMITTED BY THE ESCROW OR CLOSING OFFICER.

3.   The undersigned Buyer hands you herewith Preliminary Change of Ownership Report as provided for in Section 480.34 of the Revenue and Taxation Code, State of California which you are to cause to be filed concurrently with the Deed in our favor.  If form is rejected by the County, a surcharge may be imposed by said County and is to be paid by buyer herein.

4.   Checks to be issued at Close of Escrow:  I/We the undersigned Buyer/Borrower/Seller hereby acknowledge that we are aware the Fidelity National Title Company of California will issue a check payable to the undersigned in payment of Seller's proceeds/Borrower's proceeds or Buyer's excess deposit refund. I/We further acknowledge and agree that said check will be presented to the bank for deposit as soon as possible after receipt, and collection and payment of the funds will only be done through the regular banking channels.

In addition, in the event there are liens to be paid on the undersigned's behalf, we hereby also acknowledge that I/we will not use the pay-by-phone electronic system to pay/collect the funds as Fidelity National Title Company of

Continued on Following Page                                                        Initials: _DR_

California will not honor such payments.  The parties herein agree to be responsible for any stop payment and reissue charges and/or losses that may be incurred in connection with any and all electronic debits to Fidelity National Title Company of California's Trust Accounts.

5.  **Facsimile Signature:**  Escrow Holder is hereby authorized and instructed that, in the event any party utilizes "facsimile" transmitted signed documents or instructions to Escrow Holder, you are to rely on the same for all escrow instruction purposes and the closing of escrow as if they bore original signatures.

6.  Buyer acknowledges deposit of balance of funds to close escrow to be in the form of wire transfer, certified check, cashier's check or teller's check payable to Fidelity National Title Company of California pursuant to the "Deposit of Funds", Paragraph 1 contained in the General Provisions attached hereto and made a part hereof.

7.  The undersigned hereby authorize and instruct Escrow Holder to charge each party to the escrow for their respective Federal Express and/or special mail handling/courier fees.  Unless specified in writing by the undersigned, Escrow Holder is authorized to select special mail/delivery or courier service to be used.

All other terms and conditions remain the same.

Continued on Following Page

Initials: _____

Date: November 20, 2013

Escrow No.: Case 2:13-cv-00225-WBS-CMK   Document 60   Filed 01/03/14   Page 57 of 67
Locate No.: CAFNT0945-0945-0003-0000153108

Page 4

# GENERAL PROVISIONS

## 1. DEPOSIT OF FUNDS

The law dealing with the disbursement of funds requires that all funds be available for withdrawal as a matter of right by the title entity's escrow and/or sub escrow account prior to disbursement of any funds. Only wire-transferred funds can be given immediate availability upon deposit. Cashier's checks, teller's checks and Certified checks may be available one business day after deposit. All other funds such as personal, corporate or partnership checks and drafts are subject to mandatory holding periods which may cause material delays in disbursement of funds in this escrow. In order to avoid delays, all fundings should be wire transferred. Outgoing wire transfers will not be authorized until confirmation of the respective incoming wire transfer or of availability of deposited checks.

Deposit of funds into general escrow trust account unless instructed otherwise. You may instruct Escrow Holder to deposit your funds into an interest bearing account by signing and returning the "Escrow Instructions - Interest Bearing Account", which has been provided to you. If you do not so instruct us, then all funds received in this escrow shall be deposited with other escrow funds in one or more general escrow trust accounts, which include both non-interest bearing demand accounts and other depository accounts of Escrow Holder, in any state or national bank or savings and loan association insured by the Federal Deposit Insurance Corporation (the "depository institutions") and may be transferred to any other such escrow trust accounts of Escrow Holder or one of its affiliates, either within or outside the State of California. A general escrow trust account is restricted and protected against claims by third parties and creditors of Escrow Holder and its affiliates.

Receipt of benefits by Escrow Holder and affiliates. The parties to this escrow acknowledge that the maintenance of such general escrow trust accounts with some depository institutions may result in Escrow Holder or its affiliates being provided with an array of bank services, accommodations or other benefits by the depository institution. Some or all of these benefits may be considered interest due you under California Insurance Code Section 12413.5. Escrow Holder or its affiliates also may elect to enter into other business transactions with or obtain loans for investment or other purposes from the depository institution. All such services, accommodations, and other benefits shall accrue to Escrow Holder or its affiliates and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of such services, accommodations, interest or other benefits.

Said funds will not earn interest unless the instructions otherwise specifically state that funds shall be deposited in an interest-bearing account. All disbursements shall be made by check of **Fidelity National Title Company of California**. The principals to this escrow are hereby notified that the funds deposited herein are insured only to the limit provided by the Federal Deposit Insurance Corporation. Any instruction for bank wire will provide reasonable time or notice for Escrow Holder's compliance with such instruction. Escrow Holder's sole duty and responsibility shall be to place said wire transfer instructions with its wiring bank upon confirmation of (1) satisfaction of conditions precedent or (2) document recordation at close of escrow. Escrow Holder will NOT be held responsible for lost interest due to wire delays caused by any bank or the Federal Reserve System, and recommends that all parties make themselves aware of banking regulations with regard to placement of wires.

In the event there is insufficient time to place a wire upon any such confirmation or the wires have closed for the day, the parties agree to provide written instructions for an alternative method of disbursement. WITHOUT AN ALTERNATIVE DISBURSEMENT INSTRUCTION, FUNDS WILL BE HELD IN TRUST IN A NON-INTEREST BEARING ACCOUNT UNTIL THE NEXT OPPORTUNITY FOR WIRE PLACEMENT.

## 2. PRORATIONS AND ADJUSTMENTS

All prorations and/or adjustments called for in this escrow are to be made on the basis of a thirty (30) day month unless otherwise instructed in writing. You are to use information contained on last available tax statement, rental statement as provided by the Seller, beneficiary's statement and fire insurance policy delivered into escrow for the prorations provided for herein.

## 3. SUPPLEMENTAL TAXES

The within described property may be subject to supplemental real property taxes due to the change of ownership taking place through this or a previous escrow transaction. Any supplemental real property taxes arising as a result of the transfer of the property to Buyer shall be the sole responsibility of Buyer and any supplemental real property taxes arising prior to the closing date shall be the sole responsibility of the Seller. TAX BILLS OR REFUNDS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER.

## 4. UTILITIES/POSSESSION

Transfer of utilities and possession of the premises are to be settled by the parties directly and outside escrow.

## 5. PREPARATION AND RECORDATION OF INSTRUMENTS

Escrow Holder is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow and to order the policy of title insurance to be issued at close of escrow as called for in these instructions. Close of escrow shall mean the date instruments are recorded.

## 6. AUTHORIZATION TO FURNISH COPIES

You are authorized to furnish copies of these instructions, supplements, amendments, notices of cancellation and closing statements, to the Real Estate Broker(s) and Lender(s) named in this escrow.

## 7. RIGHT OF CANCELLATION

Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver, one copy of such notice to each of the other principals at the addresses stated in this escrow. UNLESS WRITTEN OBJECTION TO CANCELLATION IS FILED IN YOUR OFFICE BY A PRINCIPAL WITHIN TEN (10) DAYS AFTER DATE OF SUCH DELIVERY, YOU ARE AUTHORIZED TO COMPLY WITH SUCH NOTICE AND DEMAND PAYMENT OF YOUR CANCELLATION CHARGES. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual written instructions, or by final order of a court of competent jurisdiction.

## 8. PERSONAL PROPERTY

No examination or insurance as to the amount or payment of personal property taxes is required unless specifically requested.

By signing these General Provisions, the parties to the escrow hereby acknowledge that they are indemnifying the Escrow Holder against any and all matters relating to any "Bulk Sales" requirements, and instruct Escrow Agent to proceed with the closing of escrow without any consideration of matter of any nature whatsoever regarding "Bulk Sales" being handled through escrow.

## 9. RIGHT OF RESIGNATION

Escrow Holder has the right to resign upon written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder.

## 10. AUTHORIZATION TO EXECUTE ASSIGNMENT OF HAZARD INSURANCE POLICIES

Either Buyer, Seller and/or Lender may hand you the insurance agent's name and insurance policy information, and you are to execute, on behalf of the principals hereto, form assignments of interest in any insurance policy (other than title insurance) called for in this escrow, forward assignment and policy to the insurance agent, requesting that the insurer consent to such transfer and/or attach a loss payable clause and/or such other endorsements as may be required, and forward such policy(s) to the principals entitled thereto. It is not your responsibility to verify the information handed you or the assignability of said insurance. Your sole duty is to forward said request to insurance agent at close of escrow.

Further, there shall be no responsibility upon the part of Escrow Holder to renew hazard insurance policy(s) upon expiration or otherwise keep it in force either during or subsequent to the close of escrow. Cancellation of any existing hazard insurance policies is to be handled directly by the principals, and outside of escrow.

## 11. ACTION IN INTERPLEADER

The principals hereto expressly agree that you, as Escrow Holder, have the absolute right at your election to file an action in interpleader requiring the principals to answer and litigate their several

Continued on Following Page

_____ Initials: DR _____

claims and rights among themselves and you are authorized to deposit with the clerk of the court all documents and funds held in this escrow. In the event such action is filed, the principals jointly and severally agree to pay your cancellation charges and costs, expenses and reasonable attorney's fees which you are required to expend or incur in such interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by the court. Upon the filing of such action, you shall thereupon be fully released and discharged from all obligations imposed by the terms of this escrow or otherwise.

**12. TERMINATION OF AGENCY OBLIGATION**

If there is no action taken on this escrow within six (6) months after the "time limit date" as set forth in the escrow instructions or written extension thereof, your agency obligation shall terminate at your option and all documents, monies or other items held by you shall be returned to the parties depositing same. In the event of cancellation of this escrow, whether it be at the request of any of the principals or otherwise, the fees and charges due **Fidelity National Title Company of California**, including expenditures incurred and/or authorized shall be borne equally by the parties hereto (unless otherwise agreed to specifically).

**13. CONFLICTING INSTRUCTIONS**

Upon receipt of any conflicting instructions, you are to take no action in connection with this escrow until non-conflicting instructions are received from all of the principals to this escrow (subject to sections 7, 9, 11 and 12 above).

**14. REIMBURSEMENT ATTORNEY FEES/ESCROW HOLDER**

In the event that a suit is brought by any party or parties to these escrow instructions to which the Escrow Holder is named as a party which results in a judgment in favor of the Escrow Holder and against a principal or principals herein, the principals or principals' agent agree to pay said Escrow Holder all costs, expenses and reasonable attorney's fees which it may expend or incur in said suit, the amount thereof to be fixed and judgment therefore to be rendered by the court in said suit.

**15. DELIVERY/RECEIPT**

Delivery to principals as used in these instructions unless otherwise stated herein is to be by hand in person to the principal, regular mail, email or fax to any of the contact information provided in these instructions. If delivered by regular mail receipt is determined to be 72 hours after such mailing. All documents, balances and statements due to the undersigned may be delivered to the contact information shown herein. All notices, change of instructions, communications and documents are to be delivered in writing to the office of **Fidelity National Title Company of California** as set forth herein.

**16. STATE/FEDERAL CODE NOTIFICATIONS**

According to Federal Law, the Seller, when applicable, will be required to complete a sales activity report that will be utilized to generate a 1099 statement to the Internal Revenue Service.

Pursuant to State Law, prior to the close of escrow, Buyer will provide Escrow Holder with a Preliminary Change of Ownership Report. In the event said report is not handed to Escrow Holder for submission to the County in which subject property is located, upon recording of the Grant Deed, Buyers acknowledge that the applicable fee will be assessed by said County and Escrow Holder will debit the account of Buyer for same at close of escrow.

**17. NON-RESIDENT ALIEN**

The Foreign Investment in Real Property Tax Act (FIRPTA), Title 26 U.S.C., Section 1445, and the regulations thereunder, provide in part, that a transferee (buyer) of a U.S. real property interest from a foreign person (non-resident alien) must withhold a tax equal to ten percent (10%) of the amount realized on the disposition, report the transaction and remit the withholding to the Internal Revenue Service within twenty (20) days after the transfer. **Fidelity National Title Company of California** has not and will not participate in any determination of whether the FIRPTA tax provisions are applicable to the subject transaction, nor act as a Qualified Substitute nor furnish tax advice to any party to the transaction. **Fidelity National Title Company of California** is not responsible for determining whether the transaction will qualify for an exception or an exemption and is not responsible for the filing of any tax forms with the Internal Revenue Service as they relate to FIRPTA. **Fidelity National Title Company of California** is not the agent for the Buyer for the purposes of receiving and analyzing any evidence or documentation that the Seller in the subject transaction is a U.S. citizen or resident alien.

The Buyer is advised they must independently make a determination of whether the contemplated transaction is taxable or non-taxable and the applicability of the withholding requirement to the subject transaction, and should seek the advice of their attorney or accountant. **Fidelity National Title Company of California** is not responsible for the payment of this tax and/or penalty and/or interest incurred in connection therewith and such taxes are not a matter covered by the Owner's Policy of Title Insurance to be issued to the Buyer. The Buyer is advised they bear full responsibility for compliance with the tax withholding requirement if applicable and/or for payment of any tax, interest, penalties and/or other expenses that may be due on the subject transaction.

**18. ENCUMBRANCES**

Escrow Holder is to act upon any statements furnished by a lienholder or his agent without liability or responsibility for the accuracy of such statements. Any adjustments necessary because of a discrepancy between the information furnished Escrow Holder and any amount later determined to be correct shall be settled between the parties direct and outside of escrow.

You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**19. ENVIRONMENTAL ISSUES**

**Fidelity National Title Company of California** has made no investigation concerning said property as to environmental/toxic waste issues. Any due diligence required or needed to determine environmental impact as to forms of toxification, if applicable, will be done directly and by principals outside of escrow. **Fidelity National Title Company of California** is released of any responsibility and/or liability in connection therewith.

**20. USURY**

Escrow Holder is not to be concerned with any questions of usury in any loan or encumbrance involved in the processing of this escrow and is hereby released of any responsibility or liability therefore.

**21. DISCLOSURE**

Escrow Holder's knowledge of matters affecting the property, provided such facts do not prevent compliance with these instructions, does not create any liability or duty in addition to these instructions.

**22. FACSIMILE/ELECTRONIC SIGNATURE**

Escrow Holder is hereby authorized and instructed that, in the event any party utilizes electronic or "facsimile" transmitted signed documents or instructions to Escrow Holder, you are to rely on the same for all escrow instruction purposes and the closing of escrow as if they bore original signatures. "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law.

**23. CLARIFICATION OF DUTIES**

**Fidelity National Title Company of California** serves ONLY as an Escrow Holder in connection with these instructions and cannot give legal advice to any party hereto.

Escrow Holder is not to be held accountable or liable for the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow, nor as to the identity, authority or rights of any person executing the same. Escrow Holder's duties hereunder shall be limited to the proper handling of such money and the proper safekeeping of such instruments, or other documents received by Escrow Holder, and for the disposition of same in accordance with the written instructions accepted by Escrow Holder.

The agency and duties of Escrow Holder commence only upon receipt of copies of these Escrow Instructions executed by all parties.

**24. FUNDS HELD IN ESCROW**

When the company has funds remaining in escrow over 90 days after close of escrow or estimated close of escrow, the Company shall impose a monthly holding fee of $25.00 that is to be charged against the funds held by the Company.

Continued on Following Page

Initials: DR

THIS AGREEMENT IN ALL PARTS APPLIES TO, INURES TO THE BENEFIT OF, AND BINDS ALL PARTIES HERETO, THEIR HEIRS, LEGATEES, DEVISEES, ADMINISTRATORS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND WHENEVER THE CONTEXT SO REQUIRES THE MASCULINE GENDER INCLUDES THE FEMININE AND NEUTER, AND THE SINGULAR NUMBER INCLUDES THE PLURAL. THESE INSTRUCTIONS AND ANY OTHER AMENDMENTS MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE CONSIDERED AS AN ORIGINAL AND BE EFFECTIVE AS SUCH.

MY SIGNATURE HERETO CONSTITUTES INSTRUCTION TO ESCROW HOLDER OF ALL TERMS AND CONDITIONS CONTAINED IN THIS AND ALL PRECEDING PAGES AND FURTHER SIGNIFIES THAT I HAVE READ AND UNDERSTAND THESE GENERAL PROVISIONS.

**Fidelity National Title Company of California conducts escrow business under a Certificate of Authority No. 107 issued by the California Department of Insurance.**

BUYER SIGNATURE(S):

_____         Date: _____
Kelly Shane Ballensky

_____         Date: _____
Tina C. Tang

Current Mailing Address: _____

Forwarding Mailing Address: _____

Home Phone Number: _____    Fax Number: _____

Cell Phone Number: _____    E-mail Address: _____

SELLER SIGNATURE(S):

_____         Date: __11/21/13_____
Donna Ruth O'Conner Rose

Current Mailing Address: _____

Forwarding Mailing Address: _____

Home Phone Number: _____    Fax Number: _____

Cell Phone Number: _____    E-mail Address: _____

Date:  November 20, 2013

Escrow No.:  13-**153108**-MP

Locate No.:  CAFNT0945-0945-0003-0000153108

---

The above signed hereby instruct and authorize Escrow Holder to disburse proceeds as follows:

[ ]   TRANSFER   [ ] All Net Proceeds, or [  ] $_____
        To: _____
        Attn: _____
        Escrow No.: _____
[ ]   HOLD check for PICK-UP
[ ]   CALL when check is ready for PICK-UP, PHONE NUMBER _____
[ ]   WIRE funds to (Bank Name) _____
        City/State: _____
        Wire Payee: _____
        ABA Number: _____
        Account Number: _____

[ ]   MAIL   [  ] FEDERAL EXPRESS check to _____

Escrow No.: 13-**153108**-MP
Locate No.: CAFNT0945-0945-0003-0000153108
Title No.: 13-**153108**-JV

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF REDDING, COUNTY OF SHASTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 8 AS SHOWN ON THE MAP OF BLOSSOM PARK SUBDIVISION NO. S-13-86, UNIT 2, FILED IN THE OFFICE OF THE COUNTY RECORDER ON APRIL 10, 1990 IN BOOK 19 OF MAPS AT PAGE 66, SHASTA COUNTY RECORDS.

(privacy)(05-08)

Effective Date:  5/1/2008

Fidelity National Financial, Inc.
**Privacy Statement**

Fidelity National Financial, Inc. and its subsidiaries ("FNF") respect the privacy and security of your non-public personal information ("Personal Information") and protecting your Personal Information is one of our top priorities. This Privacy Statement explains FNF's privacy practices, including how we use the Personal Information we receive from you and from other specified sources, and to whom it may be disclosed. FNF follows the privacy practices described in this Privacy Statement and, depending on the business performed, FNF companies may share information as described herein.

**Personal Information Collected**

We may collect Personal Information about you from the following sources:

- Information we receive from you on applications or other forms, such as your name, address, social security number, tax identification number, asset information, and income information;
- Information we receive from you through our Internet websites, such as your name, address, email address, Internet Protocol address, the website links you used to get to our websites, and your activity while using or reviewing our websites;
- Information about your transactions with or services performed by us, our affiliates, or others, such as information concerning your policy, premiums, payment history, information about your home or other real property, information from lenders and other third parties involved in such transaction, account balances, and credit card information; and
- Information we receive from consumer or other reporting agencies and publicly recorded documents.

**Disclosure of Personal Information**

We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

- To insurance agents, brokers, representatives, support organizations, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers for the purpose of determining your eligibility for an insurance benefit or payment and/or providing you with services you have requested;
- To an insurance regulatory authority, or a law enforcement or other governmental authority, in a civil action, in connection with a subpoena or a governmental investigation;
- To companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and/or
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

We may also disclose your Personal Information to others when we believe, in good faith, that such disclosure is reasonably necessary to comply with the law or to protect the safety of our customers, employees, or property and/or to comply with a judicial proceeding, court order or legal process.

(privacy)

Effective Date:  5/1/2008

<u>Disclosure to Affiliated Companies</u> - We are permitted by law to share your name, address and facts about your transaction with other FNF companies, such as insurance companies, agents, and other real estate service providers to provide you with services you have requested, for marketing or product development research, or to market products or services to you. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

<u>Disclosure to Nonaffiliated Third Parties</u> - We do not disclose Personal Information about our customers or former customers to nonaffiliated third parties, except as outlined herein or as otherwise permitted by law.

**Confidentiality and Security of Personal Information**
We restrict access to Personal Information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Personal Information.

**Access To Personal Information/**
**Requests for Correction, Amendment, or Deletion of Personal Information**
As required by applicable law, we will afford you the right to access your Personal Information, under certain circumstances to find out to whom your Personal Information has been disclosed, and request correction or deletion of your Personal Information.  However, <u>FNF's current policy is to maintain customers' Personal Information for no less than your state's required record retention requirements for the purpose of handling future coverage claims</u>.

For your protection, <u>all requests made under this section must be in writing and must include your notarized signature to establish your identity</u>. Where permitted by law, we may charge a reasonable fee to cover the costs incurred in responding to such requests. Please send requests to:

Chief Privacy Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL  32204

**Changes to this Privacy Statement**
This Privacy Statement may be amended from time to time consistent with applicable privacy laws. When we amend this Privacy Statement, we will post a notice of such changes on our website. The effective date of this Privacy Statement, as stated above, indicates the last time this Privacy Statement was revised or materially changed.

### Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Companies**
FNTC – Fidelity National Title Company
FNTCCA – Fidelity National Title Company of California

**FNF Underwriter**
FNTIC – Fidelity National Title Insurance Company

### Available Discounts

**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 or 36 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge.

**FEE REDUCTION SETTLEMENT PROGRAM (FNTC, FNTCCA and FNTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in *The People of the State of California et al. v. Fidelity National Title Insurance Company et al.*, Sacramento Superior Court Case No. 99AS02793, and related cases.

**DISASTER LOANS (FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% or 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 32% or 50% of the appropriate title insurance rate, depending on the type of coverage selected.

CA Discount Notice (notdisc-fnt)

Effective Date: 7/1/2010

# Fidelity National Title Company of California

Proceeds from Real Estate Transactions as required by the Internal Revenue Service

*You are required by law to provide Fidelity National Title Company of California with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.*

Branch Address
2070 Churn Creek Road, Suite C
Redding, CA 96002
County Shasta County #  0003

**Substitute Form 1099-S**

This is important tax information and is being furnished to the Internal Revenue Service, as required by section 1521 of the Tax Reform Act of 1986. If you are required to file a return, a negligence penalty or other sanction will be imposed if this income is taxable and the IRS determines that it has not been reported.

Escrow No.: **13-153108**-MP
Locate No.:  **CAFNT0945-0945-0003-0000153108**

Date of closing: 11/21/13

## PROPERTY ADDRESS OR LEGAL DESCRIPTION
**5697 Constitution Way, Redding, CA 96003**

Assessor's Parcel Number (APN) - **073-330-018-000**

**PROCEEDS FOR THIS SALE WENT TO:** (MULTIPLE SELLERS - Use one form for each seller. Treat husband and wife as one seller (filing joint tax returns) unless requested otherwise, then separate forms must be used.)

1. Donna Ruth O'Connor Rose
   Sellers Name (First, MI, Last or Entity Name)

   562081178
   Federal Tax ID# for this seller

2. _____
   Spouse or Personal Representative

   (List only the Tax ID# for the seller listed on Line 1, spouse Tax ID# not required. Executor/Trustee should not list their name as the seller unless they are going to report the proceeds on their personal income tax return. Disregarded entities should provide the name and Tax ID# of the responsible person/entity.)

## TOTAL CONSIDERATION

**$49,415.00**   Total Consideration
_____ % Percentage of ownership for this seller
$_____   GROSS Allocated Proceeds
(Total consideration multiplied by percentage of ownership)

[  ] Exchange (If checked)

$_____ Tax Credit to Seller (Real property tax credits to seller contained in the 400 series of the HUD-1 or comparable closing statement form.)

## MAILING ADDRESS:

_____

_____

[  ]  Check here if the address is outside of the U.S.A.

Under penalties of perjury, I certify that I am a U.S. person or U.S. resident alien and the number shown on this statement is my correct taxpayer identification number.

Donna Ruth O'Connor Rose
Transferor's Signature

11/21/13
Date

_____
Spouse

_____
Date

**Retain for 4 years**

1099-S (Substitution) (1099) (10-03) (Rev. 09-12)



# Fidelity National Title Company
## OF CALIFORNIA

2070 Churn Creek Road, Suite C, Redding, CA  96002
530 221-8611 • FAX 530 221-2748

TO:  Michelle Padilla
Fidelity National Title Company of California
2070 Churn Creek Road, Suite C
Redding, CA  96002

DATE: November 20, 2013
ESCROW NO.: 13-**153108**-MP
LOCATE NO.: CAFNT0945-0945-0003-0000153108
TITLE NO.: 13-**153108**-JV
PROPERTY ADDRESS:
5697 Constitution Way, Redding, CA  96003

## PRELIMINARY REPORT APPROVAL

I have read the Preliminary Report dated  covering the property described in your above numbered escrow.
I know of no other matters pertaining to the condition of title other than stated in this report.  Further we
approve the legal description as being the property which is the subject of this escrow.

I hereby acknowledge receipt of a copy of said Preliminary Report.

Donna Ruth O'Conner Rose

Preliminary Report Approval – Seller (preapps)(03-09)

Most November

love