1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

12  DONNA RUTH O'CONNOR ROSE,        CIV. NO. 2:12-225 WBS CMK

13            Plaintiff,             MEMORANDUM AND ORDER RE: MOTION
                                     FOR SUMMARY JUDGMENT
14       v.

15  J.P. MORGAN CHASE, N.A.,

16            Defendant.

17

18                        ----oo0oo----

19            Plaintiff Donna Ruth O'Connor Rose brought this action

20  against defendant J.P. Morgan Chase, N.A., for breach of contract

21  arising out of alleged misconduct related to her home mortgage

22  loan.  Defendant now moves for summary judgment pursuant to

23  Federal Rule of Civil Procedure 56.

24  I.    Factual & Procedural History

25            On December 2, 2005, plaintiff obtained a mortgage loan

26  from defendant secured by real property located at 2945 Sporting

27  Court in Redding, California.  (Decl. of Jennifer M. Sanclemente

28  ("Sanclemente Decl.") Ex. 2 (Docket No. 58-4).)  The Deed of

                                   1

1   Trust obligated plaintiff to make periodic payments on the loan.

2   (Id. ¶ 1.)  If plaintiff submitted a payment that was inadequate

3   to pay the loan balance then due, the Deed of Trust permitted

4   defendant to hold these funds in a suspense account without

5   applying them to the loan balance until plaintiff paid the

6   remainder of the balance outstanding.  (Id.)  The Deed of Trust

7   stated that defendant would apply plaintiff's loan payments to

8   monthly loan balances in the order that those balances became

9   due.  (Id. ¶ 2.)

10          In the event that plaintiff failed to make payments on

11  the loan, the Deed of Trust provided that defendant would notify

12  plaintiff that she was in default, require payment by a specified

13  date, and inform plaintiff that failure to pay could result in

14  acceleration of the total amount due on the loan and the sale of

15  the property.  (Id. ¶ 22.)  If plaintiff did not cure the default

16  by the date specified, the Deed of Trust authorized defendant to

17  foreclose on the property.  (Id.)  If plaintiff was able to cure

18  the default, the Deed of Trust provided that the foreclosure

19  trustee would reconvey the property to plaintiff.  (Id. ¶ 23.)

20          The Deed of Trust also contained provisions authorizing

21  defendant to collect several types of fees from plaintiff.  One

22  provision permitted defendant to impose late fees for untimely

23  payments.  (Id. ¶ 1.)  Another provision allowed defendant to

24  recover "all expenses incurred" as a result of plaintiff's

25  default on the loan "including, but not limited to, reasonable

26  attorneys' fees and costs of title evidence."  (Id. ¶ 22.)  A

27  third provision authorized defendant to recoup any money it paid

28  to a foreclosure trustee to reconvey the defaulted property to

2

1  defendant.  (Id. ¶ 23.)  Defendant recorded these fees as

2  "corporate advance transactions" and billed them to plaintiff in

3  the form of "corporate advance fees" that it assessed against

4  plaintiff's loan balance.  (Sanclemente Decl. ¶ 9 (Docket No. 58-

5  2).)

6       Between June 1, 2006 and December 31, 2008, plaintiff

7  incurred sixteen charges for making late monthly payments.  (See

8  Sanclemente Decl. ¶ 11; Sanclemente Decl. Ex. 3 at 326-41 (Docket

9  No. 58-5).)  On October 26, 2009, defendant recorded a Notice of

10 Default against the property because plaintiff had not made any

11 loan payments since June 30, 2009.  (Sanclemente Decl. ¶ 10;

12 Sanclemente Decl. Ex. 6 (Docket No. 58-8).)  On December 10, 2009,

13 over five months after she had made her last payment, plaintiff

14 sent defendant a cashier's check for $15,218.49.  (Sanclemente

15 Decl. ¶ 11; Decl. of Michael A. Doran ("Doran Decl.") ¶ 45

16 (Docket No. 70).)  Defendant rescinded that Notice of Default on

17 December 15, 2009.  (Sanclemente Decl. ¶ 12; Sanclemente Decl.

18 Ex. 7 (Docket No. 58-9).)

19      Although plaintiff was able to cure her default in

20 2009, she incurred six more charges for making late payments in

21 2010.  (See Sanclemente Decl. Ex. 3 at 313-18.)  In 2011,

22 plaintiff made three payments of $2,779.00 in January, February,

23 and March, but made no loan payments in April or May.  (See id.

24 at 312; Sanclemente Decl. ¶ 14.)  As a result, defendant recorded

25 a Notice of Default on June 2, 2011, reflecting an arrearage of

26 $11,488.72.  Plaintiff sent defendant two cashier's checks

27 totaling $13,885.49 in late June 2011, (see Doran Decl. Ex. 8

28 (Docket No. 70-8)), which defendant applied to satisfy

1   plaintiff's outstanding loan balances for February, March, April,

2   May, and June of that year (see id.; Sanclemente Decl. ¶ 14).

3   Defendant rescinded the Notice of Default on July 7, 2011.

4   (Sanclemente Decl. ¶ 15; Sanclemente Decl. Ex. 10 (Docket No. 58-

5   12).)

6        Plaintiff then missed her July 2011 loan payment.

7   (Sanclemente Decl. ¶ 16; Sanclemente Decl. Ex. 3 at 310-11.)  On

8   August 15, 2011, plaintiff made a payment of $5,185.58, which

9   defendant applied to satisfy plaintiff's July 2011 and August

10  2011 loan payments as well as outstanding late fees and corporate

11  advance fees that plaintiff owed.  (See Sanclemente Decl. Ex. 11

12  (Docket No. 58-13).)  On August 17, 2011, defendant sent

13  plaintiff a letter informing her that there was $1,008.86 in her

14  suspense account, and that she could satisfy her loan payment for

15  September 2011 by sending defendant $1584.73, the difference

16  between the loan payment due and the amount in the suspense

17  account.  (See id.; Doran Decl. Ex. 8 (Docket No. 70-8).)

18        After defendant sent this letter, but before plaintiff

19  made any payment on the loan, defendant deducted an additional

20  $1028.26 in corporate advance fees from plaintiff's suspense

21  account.  (Sanclemente Decl. ¶ 18; Sanclemente Decl. Ex. 3 at

22  309.)  As a result, when plaintiff submitted a payment for

23  $1584.73 to pay the remaining amount due for September 2011,

24  defendant placed that payment into the suspense account because

25  it was insufficient to satisfy the total amount plaintiff owed

26  for that month.  (Sanclemente Decl. ¶ 18; Sanclemente Decl. Ex. 4

27  at 270 (Docket No. 58-6).)  When plaintiff submitted payments for

28  the next several months, defendant used those payments to satisfy

4

1  the previous month's balance, and plaintiff remained delinquent

2  on her loan.  (See Sanclemente Decl. ¶¶ 19-22; Decl. of Michael

3  D. Rosen Ex. 1 ("Rosen Report") at 4-5 (Docket No. 58-19).)

4  By December 31, 2011--three days after plaintiff filed

5  this action--plaintiff had an outstanding balance of $2807.93,

6  which consisted of the loan payment due for December 2011 and

7  three late charges.  (Rosen Report at 3; Sanclemente Decl. Ex. 4

8  at 278.)  By March 7, 2012, plaintiff had an outstanding loan

9  balance of $5631.44, which consisted of the payments due for

10 February and March 2012 and four late charges.  (Rosen Report at

11 3; Sanclemente Decl. Ex. 4 at 292.)  Plaintiff has not made any

12 loan payments since February 2012.  (See Doran Decl. Ex. 21

13 (Docket No. 70-21).

14 Plaintiff initiated this action on December 28, 2011 in

15 Shasta County Superior Court, and defendant removed the action to

16 this court pursuant to 28 U.S.C. § 1441(b) based on diversity

17 jurisdiction.  (Docket No. 1.)  Plaintiff subsequently amended

18 the complaint to bring a claim for breach of contract and a claim

19 for constructive fraud.  (Docket No. 27.)  The court dismissed

20 the constructive fraud claim with prejudice on August 2, 2012.

21 (Docket No. 39.)  Defendant now moves for summary judgment on

22 plaintiff's breach of contract claim pursuant to Federal Rule of

23 Civil Procedure 56.  (Docket No. 58.)

24 II.  Evidentiary Objections

25 On a motion for summary judgment, "[a] party may object

26 that the material cited to support or dispute a fact cannot be

27 presented in a form that would be admissible in evidence."  Fed.

28 R. Civ. P. 56(c)(2).  "[T]o survive summary judgment, a party

1    does not necessarily have to produce evidence in a form that

2    would be admissible at trial, as long as the party satisfies the

3    requirements of Federal Rules of Civil Procedure 56." Fraser v.

4    Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v.

5    City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001))

6    (internal quotation marks omitted).  Even if the non-moving

7    party's evidence is presented in a form that is currently

8    inadmissible, such evidence may be evaluated on a motion for

9    summary judgment so long as the moving party's objections could

10   be cured at trial.  See Burch v. Regents of the Univ. of Cal.,

11   433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (Shubb, J.).

12       A.   Plaintiff's Objections

13            Plaintiff initially raises a variety of objections to

14   Defendant's Statement of Undisputed Facts,[1] the Declaration of

15   Jennifer M. Sanclemente, and the Declaration of Michael Rosen on

16   the basis of relevance, lack of foundation, and undue prejudice.

17   (See Docket Nos. 67-69.)  These objections are duplicative of the

18   summary judgment standard itself.  See Burch, 433 F. Supp. 2d at

19   1119-20.  A court can award summary judgment only when there is

20   no genuine dispute of material fact.  Statements based on

21   improper legal conclusions or without personal knowledge are not

22   facts and can be considered as arguments, not as facts, on

23   summary judgment.  Instead of challenging the admissibility of

24   this evidence, lawyers should challenge its sufficiency.

25            [1]   This court does not consider statements of undisputed
26   fact in ruling on a motion for summary judgment.  Instead, the
     court looks to the evidence itself (whether in the declarations,
27   depositions, or discovery responses) referenced in the moving or
     opposing papers to determine whether there are disputed issues of
28   material fact.

1  Objections on any of these grounds are superfluous, and the court

2  will overrule them.

3        Next, plaintiff objects to the Declaration of Jennifer

4  M. Sanclemente on the basis that she "has not established herself

5  as an expert" and is therefore not competent to testify about how

6  defendant accounted for plaintiff's loan payments.  (Pl.'s

7  Objections to Sanclemente Decl. ¶ 1(i)(a) (Docket No. 68).)  This

8  objection is misplaced because Sanclemente, an employee of

9  defendant responsible for maintaining customer account records,

10  is a lay witness whose testimony is based on her "personal

11  knowledge of the facts" set forth in her declaration.

12  (Sanclemente Decl. ¶ 1.)  The court will therefore overrule this

13  objection.

14        Plaintiff also objects to the exhibits attached to

15  Sanclemente's declaration on the basis that they are inadmissible

16  hearsay.  (Pl.'s Objections to Sanclemente Decl. ¶ 1(i)(b).)

17  However, Sanclemente avers that these exhibits consist of

18  financial records about plaintiff's mortgage loan that were

19  "maintained in the course of Chase's regularly and ordinarily

20  conducted business activities."  (Sanclemente Decl. ¶¶ 3, 4.)

21  Sanclemente also avers that she has personal knowledge of these

22  records and has authenticated that they are records of

23  plaintiff's mortgage payments and charges against her account.

24  (Id. ¶¶ 1, 5.)  These exhibits are therefore not hearsay, see

25  Fed. R. Evid. 803(6), and the court will overrule this objection.

26        Plaintiff also objects to the Declaration of Michael D.

27  Rosen on the basis that Rosen is incompetent to testify as an

28  expert.  (Pl.'s Objections to Rosen Decl. ¶ 1(i)(c) (Docket No.

7

1  69).)  Federal Rule of Evidence 702 permits a witness who is

2  qualified "by knowledge, skill, experience, training, or

3  education" to testify as an expert if:

4      (a) the expert's scientific, technical, or other
       specialized knowledge will help the trier of fact to
5      understand the evidence or determine a fact in issue;
       (b) the testimony is based on sufficient facts or
6      data; (c) the testimony is the product of reliable
       principles and methods; and (d) the expert has
7      reliably applied the principles and methods to the
       facts of the case.
8

9  Fed. R. Evid. 702.  "A trial court has broad latitude not only in

10  determining whether an expert's testimony is reliable, but also

11  in determining how to determine the testimony's reliability."

12  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir.

13  2011) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 145

14  (1999)).

15      Rosen, who is a certified public accountant with a

16  Ph.D. in agricultural economics and who has served as a financial

17  and accounting expert in over 300 cases, is qualified to offer

18  expert testimony about how plaintiff's loan payments were

19  accounted for.  (See Rosen Report at 1-2; Rosen Report Exs. 1-2.)

20  The court is also satisfied that Rosen has relied on a sufficient

21  quantity of data, that his accounting methodology is reliable,

22  and that he has reliably applied this methodology to the facts of

23  the case.  (See Rosen Report at 2-6.)  Rosen's testimony

24  therefore satisfies the criteria set forth by Rule 702 and is

25  sufficiently reliable according to the standards set forth by

26  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579

27  (1993), Kumho Tire, 526 U.S. 137, and their progeny.

28      Plaintiff contends that Rosen's testimony is

8

1    nonetheless improper because the application of plaintiff's

2    payments to her loan balance implicates "issue[s] of contract law

3    and promissory estoppel, not accounting."  (Pl.'s Objections to

4    Rosen Decl. ¶ 1(i)(c).)  This argument mischaracterizes Rosen's

5    testimony.  Rosen's testimony concerns the factual question of

6    "whether payments made by [plaintiff] had been accurately applied

7    towards the balances," not the legal question of whether

8    plaintiff had performed her obligations under the mortgage loan

9    or whether defendant had breached its obligations under the loan.

10   (Rosen Report at 2.)  Even if plaintiff were correct that Rosen's

11   testimony bears on these questions, it is well-established that

12   "testimony in the form of an opinion or inference otherwise

13   admissible is not objectionable because it embraces an ultimate

14   issue to be decided by the trier of fact."  Nationwide Transport

15   Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058 (9th Cir.

16   2008) (citing Fed. R. Evid. 704(a)).  The court will therefore

17   overrule this objection.

18            Plaintiff also objects to Rosen's testimony on the

19   basis that defendant did not disclose the Schedule of Corporate

20   Advance Transactions or identify the names of the attorneys who

21   were billed for foreclosure-related fees.  (Pl.'s Objections to

22   Rosen Decl. ¶ 1(i)(b).)  Plaintiff offers no evidence to

23   substantiate this assertion.  In any event, plaintiff concedes

24   that she was aware that Rosen relied on this information since

25   April 29, 2013, the date on which defendant produced his expert

26   report. (See id.)  Plaintiff had over nine months in which she

27   could have sought to compel defendant to produce this

28   information.  Even if plaintiff were correct that defendant had

1  failed to include this information in its initial disclosures,

2  this alone "would not warrant the extreme sanction of exclusion."

3  Semtech Corp. v. Royal Ins. Co. of Am., Civ. No. 03-2460 GAF

4  PJWx, 2005 WL 6192906, at *3 (C.D. Cal. Sep. 8, 2005) (citation

5  omitted).  The court will therefore overrule this objection.

6         Finally, plaintiff contends that Rosen "has not

7  established [himself] as an expert who can rely on hearsay

8  documents to formulate a non-accounting opinion."  (Pl.'s

9  Objections to Rosen Decl. ¶ 1(ii).)  Those documents are

10  identical to several documents attached as exhibits to the

11  Sanclemente Declaration that the court has already held are

12  admissible as business records under Federal Rule of Evidence

13  803(6).  The court will therefore overrule this objection.

14      B.   Defendant's Objections

15         Defendant objects to every paragraph in the Declaration

16  of Michael Doran.  (See Def.'s Objections to Doran Decl. (Docket

17  No. 72.)  As with plaintiff's objections, defendant's objections

18  on the basis of relevance, lack of foundation, impermissible

19  opinion testimony, and speculation are all duplicative of the

20  summary judgment standard itself and the court will overrule

21  them.  See Burch, 433 F. Supp. 2d at 1119-20.  The court does not

22  consider the evidence that defendant characterizes as

23  inadmissible evidence of settlement negotiations, (see Def.'s

24  Objections to Doran Decl. ¶ 56), and therefore overrules that

25  objection as moot.  Even if the court considered the evidence

26  that defendant characterizes as hearsay or improper expert

27  opinion, the court concludes that this evidence does not raise a

28  genuine issue of material fact sufficient to withstand summary

1    judgment, and therefore overrules these objections as moot.

2    III. <u>Discussion</u>

3         Summary judgment is proper "if the movant shows that

4    there is no genuine dispute as to any material fact and the

5    movant is entitled to judgment as a matter of law."  Fed. R. Civ.

6    P. 56(a).  A material fact is one that could affect the outcome

7    of the suit, and a genuine issue is one that could permit a

8    reasonable jury to enter a verdict in the non-moving party's

9    favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

10    (1986).  The party moving for summary judgment bears the initial

11    burden of establishing the absence of a genuine issue of material

12    fact and can satisfy this burden by presenting evidence that

13    negates an essential element of the non-moving party's case.

14    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

15    Alternatively, the moving party can demonstrate that the non-

16    moving party cannot produce evidence to support an essential

17    element upon which it will bear the burden of proof at trial.

18    <u>Id.</u>

19         Once the moving party meets its initial burden, the

20    burden shifts to the non-moving party to "designate 'specific

21    facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at

22    324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

23    the non-moving party must "do more than simply show that there is

24    some metaphysical doubt as to the material facts."  <u>Matsushita</u>

25    <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

26    "The mere existence of a scintilla of evidence . . . will be

27    insufficient; there must be evidence on which the jury could

28    reasonably find for the [non-moving party]."  <u>Anderson</u>, 477 U.S.

1   at 252.

2          In deciding a summary judgment motion, the court must

3   view the evidence in the light most favorable to the non-moving

4   party and draw all justifiable inferences in its favor.  Id. at

5   255.  "Credibility determinations, the weighing of the evidence,

6   and the drawing of legitimate inferences from the facts are jury

7   functions, not those of a judge . . . ruling on a motion for

8   summary judgment . . . ."  Id.

9          "[T]he elements of a cause of action for breach of

10   contract are (1) the existence of the contract, (2) plaintiff's

11   performance or excuse for nonperformance, (3) defendant's breach,

12   and (4) the resulting damages to the plaintiff."  Oasis W.

13   Realty, Inc. v. Goldman, 51 Cal. 4th 811, 821 (2011).  Failure to

14   make payments on the terms required by a mortgage loan

15   constitutes non-performance and ordinarily bars a plaintiff from

16   prevailing on a breach of contract claim based on that loan.

17   See, e.g., Wise v. Wells Fargo Bank, N.A., 850 F. Supp. 2d 1047,

18   1056 (C.D. Cal. 2012) (holding that, because plaintiff "admits .

19   . . to having defaulted on the Loan," her "breach of contract

20   cause of action fails as a matter of law"); Barsoumian v. Aurora

21   Mortg. Servs., LLC, Civ. No. 12-4368 PA (AGRx), 2012 WL 6012984,

22   at *4 (C.D. Cal. Dec. 3, 2012) ("Plaintiff's FAC admits that he

23   was behind on his mortgage payments and in default on the loan .

24   . . . Plaintiff has failed to . . . perform[] his obligations

25   under that contract.")

26          Here, defendant has offered evidence that plaintiff was

27   in default on her loan when she filed this action.  On August 15,

28   2011, plaintiff was current on her loan payments through August

1    2011 and had a surplus of $1008.06 remaining in her suspense
2    account.  (See Sanclemente Decl. Ex. 11; Rosen Report at 4-5.)
3    Between August 16 and August 22, 2011, however, defendant
4    assessed five corporate advance fees totaling $1028.06, which it
5    deducted from plaintiff's suspense account. (Sanclemente Decl. ¶
6    18; Sanclemente Decl. Ex. 3 at 309.)  When plaintiff sent in a
7    payment for $1584.73 to satisfy her September 2011 balance, that
8    payment constituted a partial payment and was placed in her
9    suspense account without being applied to her loan balance.
10   (Sanclemente Decl. ¶ 18; Sanclemente Decl. Ex. 4 at 270.)
11   Defendant then applied plaintiff's October 2011 payment to her
12   September 2011 balance, her November 2011 payment to her October
13   2011 balance, and so forth.  (Rosen Report at 5.)  As a result,
14   when plaintiff filed this lawsuit on December 28, 2011, she was
15   in default on her loan.  (See id.; Sanclemente Decl. ¶¶ 19-22.)
16   Plaintiff offers no evidence that she cured the default at any
17   time thereafter; on the contrary, plaintiff's default grew from
18   $2807.93 on December 31, 2011 to $5631.44 on March 7, 2012, and
19   she has not made any payment since that point.  (See Sanclemente
20   Decl. Ex. 4 at 278, 292; Rosen Report at 3.)

21        Plaintiff contends that this apparent default resulted
22   not from her failure to perform under the terms of the Deed of
23   Trust, but from defendant's failure to correctly calculate her
24   loan balance and apply her payments to the loan.  (See Doran
25   Decl. ¶ 58; Pl.'s Resps. to Def.'s 1st Set of Interrogs. ¶ 4
26   (Docket No. 58-18.)  There is no evidence to support this claim.
27   Defendant's accounting records show that plaintiff was current on
28   her loan payments as of August 15, 2011, and had $1008.06 in her

1   suspense account.  (See Rosen Report Ex. 3 at 29; Sanclemente

2   Decl. ¶17.)  Those records also document each of the five

3   corporate advance fees that defendant assessed against

4   plaintiff's suspense account between August 16 and 22, 2011, each

5   of which has a matching entry in the accounting records

6   representing a foreclosure-related fee that plaintiff incurred as

7   a result of her default in June 2011.  (Sanclemente Decl. Ex. 3

8   at 309-10; Sanclemente Decl. Ex. 5 (Docket No. 58-7).)

9        Once defendant assessed these fees, plaintiff had a

10  deficit in her suspense account.  (See id.; Rosen Report Ex. 3 at

11  30.)  When plaintiff sent in a payment of $1584.73, that payment

12  was not enough to satisfy the required loan payment of $2592.79.

13  (Rosen Report at 5; Sanclemente Decl. ¶ 18.)  The Deed of Trust

14  explicitly authorized defendant to hold partial payments in the

15  suspense account in lieu of applying them to plaintiff's loan

16  balance.  (Sanclemente Decl. Ex. 2 ¶ 1.)  As a result, when

17  plaintiff received her next loan statement on September 22, 2011,

18  it informed her that she had $1584.73 -- the amount of her

19  previous payment -- in her "Unapplied Funds Balance" and that she

20  owed $5,293.15, consisting of two outstanding monthly payments of

21  $2592.79 and a late fee of $107.57.  (Sanclemente Decl. Ex. 4 at

22  270; Doran Decl. Ex. 11 (Docket No. 70-11).)  Those numbers are

23  consistent with Rosen's accounting of plaintiff's loan payments.

24  (See Rosen Report Ex. 3 at 28-29.)

25       Plaintiff's argument that defendant misapplied her loan

26  payments is premised on her attorney's own "summary of accounting

27  based on the verified Second Amended Complaint and verified

28  answer by Chase."  (Doran Decl. ¶ 56; Doran Decl. Ex. 21 (Docket

No. 70-21).)  This accounting is incomplete because it omits all
of the corporate advance fees or late fees that defendant billed
to plaintiff from August 2011 onwards.  (See Doran Decl. Ex. 21.)
By contrast, defendant's evidence explicitly accounts for the
assessment of these fees.  For instance, both Sanclemente and
Rosen explicitly state that defendant assessed corporate advance
fees before plaintiff sent in her September 2011 payment, and
rely on this fact to conclude that defendant accurately declined
to apply plaintiff's September 2011 payment of $1584.73 to her
account because it was a partial payment.  (Sanclemente Decl. ¶
18; Rosen Report at 4-5.)  Even plaintiff's own expert witness, a
certified public accountant named Wayne Brown, concedes that "the
loan was still in arrears for the September 2011 payment even
after the $1584.73 was paid" because "this payment was posted to
a suspense account."  (Doran Decl. Ex. 20 (Docket No. 70-20).)

        Plaintiff then contends that she was not in default on
the loan because the fees that defendant assessed for
foreclosure-related services were unlawful.  In particular,
plaintiff argues that the imposition of these fees violated
section 2924.17 of the California Civil Code, which requires a
loan servicer to ensure that it has "reviewed competent and
reliable evidence to substantiate the borrower's default and the
right to foreclose" before recording a Notice of Default.  (Pl.'s
Opp'n at 3-4 (Docket No. 66).)  Because the Notices of Default
were unlawful, plaintiff reasons, the fees that defendant
incurred in recording and rescinding them were also unlawful.
(Id.)

        Section 2924.17 is part of the Homeowner's Bill of

1  Rights ("HBOR"), which "took effect on January 1, 2013."

2  Rockridge Trust v. Wells Fargo, N.A., --- F. Supp. 2d ----, Civ.

3  No. 13:1457 JCS, 2013 WL 5428722, at *28 (N.D. Cal. Sep. 25,

4  2013).  "California courts comply with the legal principle that

5  unless there is an express retroactivity provision, a statute

6  will not be applied retroactively unless it is very clear from

7  extrinsic sources that the Legislature . . . must have intended a

8  retroactive application."  Myers v. Philip Morris Cos., 28 Cal.

9  4th 828, 841 (2002).

10         Plaintiff has not cited, and the court cannot identify,

11  any authority for the proposition that section 2924.17 or any

12  other provision of the HBOR applies retroactively to Notices of

13  Default recorded before January 1, 2013.  On the contrary,

14  numerous courts have held that the HBOR "does not apply

15  retroactively."  Emick v. JP Morgan Chase Bank, Civ. No. 2:13-340

16  JAM AC, 2013 WL 3804039, at *3 (E.D. Cal. July 19, 2013); see

17  also, e.g., Rockridge Trust, 2013 WL 5428722 at *28; Morgan v.

18  Aurora Loan Servs., LLC, Civ. No. 12-4350 CAS MRWx, 2013 WL

19  5539392, at *6 (C.D. Cal. Oct. 7, 2013).  Plaintiff's contention

20  that the corporate advance fees violated section 2924.17 is

21  therefore unavailing.

22         Plaintiff also contends that defendant could not bill

23  her for foreclosure-related attorneys' fees because the

24  attorneys' services constituted legal malpractice and therefore

25  are "worth nothing."  (Pl.'s Opp'n at 4.)  This contention fails

26  because plaintiff cannot assert a claim premised on the

27  malpractice of attorneys retained by defendant.  While plaintiff

28  cites a number of cases in support of the proposition that an

16

1  attorney may "be liable to a third party for malpractice," the

2  California Supreme Court has clarified that this rule applies

3  only where the third party was an "intended, third party

4  beneficiar[y] of the contract to provide legal services."

5  Borrissoff v. Taylor & Faust, 33 Cal. 4th 523, 530 (2004)

6  (citations omitted).  Plaintiff was not the intended beneficiary

7  of the foreclosure proceedings that defendant initiated against

8  her property; defendant was. Plaintiff therefore cannot bring a

9  claim premised on the alleged malpractice of defendant's

10  attorneys because "an attorney has no duty to protect the

11  interests of an adverse party."  Fox v. Pollack, 181 Cal. App. 3d

12  954, 961 (1986).

13          Plaintiff also argues that the imposition of the

14  corporate advance fees was unlawful because the mortgage loan was

15  "unconscionable to start out with."  (Pl.'s Opp'n at 2.)  Under

16  California law, "a court may choose not to enforce a contract or

17  a portion of a contract that it finds unconscionable."  Rosenfeld

18  v. JPMorgan Chase Bank, N.A., 732 F. Supp. 2d 952, 966 (N.D. Cal.

19  2010) (citing Cal. Civ. Code § 1670.5).  A contract term is only

20  unenforceable on this basis if it is both procedurally and

21  substantively unconscionable.  Shroyer v. New Cingular Wireless

22  Servs., Inc., 498 F.3d 976, 981-82 (9th Cir. 2007).  A contract

23  term is procedurally unconscionable when "there is oppression or

24  surprise due to unequal bargaining power," and is substantively

25  unconscionable when it generates "results [that] are overly harsh

26  or one-sided."  Rosenfeld, 732 F. Supp. 2d at 966 (citing

27  Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005)).

28          There is no evidence that the mortgage loan or any

1    provision contained therein was procedurally unconscionable.  The

2    provisions authorizing corporate advance fees are plainly written

3    into the Deed of Trust, which plaintiff "ha[d] a duty to read . .

4    . before signing." Rosenfeld, 732 F. Supp. 2d at 966 (holding

5    that a loan provision permitting a lender to adjust the interest

6    rate on plaintiff's home mortgage was not procedurally

7    unconscionable because the loan agreement "clearly explains the

8    terms of repayment"); see also, e.g., Emp. Painters Trust v. J &

9    B Finishes, 77 F.3d 1188, 1192 (9th Cir. 1996) ("A party who

10   signs a written agreement is bound by its terms, even though the

11   party neither reads the agreement nor considers the legal

12   consequences of signing it.").

13          There is likewise no evidence that this provision was

14   "hidden" from plaintiff or that she had an "absence of meaningful

15   choice" about whether to sign the Deed of Trust.  Altman v. PNC

16   Mortg., 850 F. Supp. 2d 1057, 1080-81 (E.D. Cal. 2012) (O'Neill,

17   J.) (citing A & M Produce Corp. v. FMC Corp., 135 Cal. App. 3d

18   473, 486 (4th Dist. 1982)).  In fact, plaintiff's lawyer

19   testifies that he was present when defendant's loan broker

20   suggested that plaintiff enter into the mortgage loan, that he

21   did not "support the plaintiff obtaining such a loan," but that

22   he was nevertheless "not able to convince plaintiff of the

23   problems with borrowing far in excess of her income."  (Doran

24   Decl. ¶ 8.)  Absent any evidence of oppression or surprise in the

25   formation of the contract, plaintiff's argument that the

26   provision authorizing corporate advance fees is unconscionable is

27   unavailing.  See Rosenfeld, 732 F. Supp. 2d at 966.

28          Plaintiff then suggests that defendant's imposition of

1   the fees constituted a breach of contract because she was not

2   "promptly notified" of them, as required by the Deed of Trust.

3   (Doran Decl. ¶ 25.)   This argument fails because the Deed of

4   Trust does not require defendant to "promptly notify" plaintiff

5   of any fees.   The provision of the Deed of Trust that plaintiff

6   cites states that "<u>Borrower</u> shall promptly furnish <u>to Lender</u> all

7   notices of amounts to be paid" as escrow items.   (Sanclemente

8   Decl. Ex. 2 ¶ 3 (emphasis added).)   It does not state that

9   defendant has an obligation to notify plaintiff of corporate

10  advance charges, promptly or otherwise.   (See <u>id.</u>)

11          Nor did defendant fail to notify plaintiff of the

12  corporate advance charges.   In a Mortgage Loan Statement dated

13  September 22, 2011, defendant indicated that it had billed five

14  separate corporate advance charges to plaintiff's account, stated

15  the amount of each charge, and notified plaintiff that there was

16  $1584.73 remaining in her suspense account.   (Doran Decl. Ex. 11

17  (Docket No. 70-11).)   Plaintiff's attorney admits that plaintiff

18  received this letter and that he reviewed it "shortly after

19  September 22, 2011."   (Doran Decl. ¶ 27.)   Although plaintiff's

20  attorney claims that he "didn't crack the 'code'" of what the

21  charges stated referred to, (see <u>id.</u>), this failure reflects his

22  own lack of comprehension, not any failure by defendant to notify

23  plaintiff of the corporate advance fees.   In fact, defendant

24  notified plaintiff on multiple occasions that it had billed her

25  for foreclosure-related fees, and accurately stated the amount

26  she owed on every monthly statement it issued.   (See Sanclemente

27  Decl. Ex. 4 at 270-294.)   If plaintiff or her attorney were

28  confused by these charges, they were free to "contact a Customer

19

1 │ Care Professional," who defendant invited plaintiff to call with

2 │ "any questions regarding [her] balance."  (<u>Id.</u> at 270.)

3 │         At oral argument, plaintiff's attorney raised a new

4 │ argument: even if plaintiff appeared to be in default when she

5 │ filed this lawsuit, this default was excused because an

6 │ accounting error in 2009 caused her to overpay her loan by

7 │ several thousand dollars.  Having not brought his brief or any of

8 │ the exhibits with him to oral argument, plaintiff's attorney

9 │ nonetheless assured the court that there was ample support for

10 │ this conclusion and that it was a matter of "simple math."

11 │ Despite the court's repeated invitations to identify portions of

12 │ the record that supported this theory, he was unable to do so.

13 │ After several minutes of fumbling through incomprehensible pieces

14 │ of paper that he characterized as "evidence," plaintiff's

15 │ attorney exhausted the court's patience and the matter was taken

16 │ under submission.  After the hearing, the court independently

17 │ searched through the file again in attempt to find some support

18 │ for counsel's theory.  It has found none.

19 │         In short, the undisputed evidence shows that defendant

20 │ correctly applied plaintiff's payments from July 2011 onward to

21 │ her account, that plaintiff's payments from September 2011 onward

22 │ were untimely, and that she was in default on her loan at the

23 │ time she filed this action.  While the court is not entirely

24 │ clear why defendant chose to inform plaintiff that she had

25 │ $1008.06 remaining in her suspense account immediately before

26 │ billing her for corporate advance fees that she had incurred over

27 │ a month prior, plaintiff offers no evidence that defendant's

28 │ billing was erroneous or that the fees it charged her were

1  unlawful.[2]  Because plaintiff is in default on her mortgage loan,

2  she has failed to perform under the terms of that loan and

3  therefore cannot prevail on her breach of contract claim.  See

4  Wise, 850 F. Supp. 2d 1056.  Accordingly, the court must grant

5  defendant's motion for summary judgment.

6          IT IS THEREFORE ORDERED that defendant's motion for

7  summary judgment be, and the same hereby is, GRANTED.

8          The Clerk of the Court is directed to enter judgment in

9  accordance with this Order and close the file.

10  Dated:  February 10, 2014

11  _____

WILLIAM B. SHUBB
12  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19  _____

[2]      In addition to the arguments she raises in her
20  Opposition, plaintiff alleges at various points in the Complaint
and in her responses to defendant's interrogatories that
21  defendant's billing practices failed to comply with the Real
Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et
22  seq., and its implementing regulations.  (See Compl. ¶ 81; Resps.
to Def.'s 1st Set of Interrogs. ¶ 4.)  Plaintiff does not
23  identify which portions of RESPA or its regulations that
defendant allegedly violated or cite any authority in support of
24  her claim that defendant's imposition of corporate advance fees
violated RESPA.  To the extent plaintiff claims that the fees
25  were unlawful because they were based on misrepresentations of
the amount due on her loan, this argument fails because
26  defendant's accounting demonstrates that it accurately calculated
the amount due on the loan and applied plaintiff's payments
27  appropriately.

28

21